# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

Case No. 18-62758-CIV-DIMITROULEAS
Case No. 19-61623-CIV-DIMITROULEAS
Case No. 20-60303-CIV-DIMITROULEAS
Case No. 20-60306-CIV-DIMITROULEAS
Case No. 20-60307-CIV-DIMITROULEAS
Case No. 20-60308-CIV-DIMITROULEAS
Case No. 20-60310-CIV-DIMITROULEAS
Case No. 20-60311-CIV-DIMITROULEAS
Case No. 20-60317-CIV-DIMITROULEAS
Case No. 20-60319-CIV-DIMITROULEAS
Case No. 20-60322-CIV-DIMITROULEAS
Case No. 20-60325-CIV-DIMITROULEAS
Case No. 20-60326-CIV-DIMITROULEAS
Case No. 20-60327-CIV-DIMITROULEAS
Case No. 20-60328-CIV-DIMITROULEAS
Case No. 20-60330-CIV-DIMITROULEAS
Case No. 20-60331-CIV-DIMITROULEAS
Case No. 20-60332-CIV-DIMITROULEAS
Case No. 20-60333-CIV-DIMITROULEAS

IN RE: MARJORY STONEMAN DOUGLAS
HIGH SCHOOL SHOOTING FTCA LITIGATION
_____/


**PLAINTIFFS' RESPONSE TO THE GOVERNMENT'S MOTION TO DISMISS**

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

Two seemingly contradictory things can be true at once. F. Scott Fitzgerald once wrote that "the test of intelligence is the ability to hold two opposed ideas in one's head at the same time." This case exemplifies the maxim, because it presents an apparent paradox: it is extraordinary, even unique, and at the same time utterly commonplace.

On the one hand, this case is singular in the context of federal tort claims. It is exceptional in its essential facts: it began with an unprecedented failure of communication between the FBI's Public Access Line (PAL) and its investigative units. On January 5, 2018, the PAL received an urgent and specific tip call about the imminent threat that Nikolas Cruz posed. But in an extraordinary breach of its own protocols, the PAL failed to pass the information along to the highly trained FBI agents who would have prevented the tragedy. The FBI's Deputy Director said that when he listened to the recording of the call, he was "appalled" at the specificity of the tip and his heart sank. This case is also extraordinarily tragic in its consequences: just weeks after the call, Cruz went on precisely the sort of shooting rampage the tipster had warned he would, killing seventeen people and injuring seventeen others at Marjory Stoneman Douglas High School. But perhaps the most unique feature of this case is what the FBI said about its role, with remarkable candor, in the aftermath of the tragedy. In a series of public admissions—unprecedented, as far as we are aware, in the history of the FBI—the agency acknowledged its failures. The FBI admitted that PAL employees made terrible mistakes in violation of agency protocols, and that the tragedy would not have occurred if those mistakes had not been made. No prior federal tort case has involved such direct and immediate admissions of wrongdoing, breach of protocol, and causation.

On the other hand, this case bears the markings of an ordinary tort case. Outside the realm of federal tort claims, it is the sort of negligence case that proceeds against private actors with regularity, both in Florida and elsewhere. It is hornbook tort law that one who undertakes to warn the public of a danger and thereby engenders reliance must perform his good Samaritan task in a careful manner. The FBI decided to create and operate the PAL to process and transmit crucial information about imminent threats to FBI field offices for investigation. The establishment of the PAL engendered reliance—and did engender reliance here—on the PAL's operation as the country's principal intake system for information about threats of terrorism and mass shootings. Once the government made the decision to establish the PAL, it was obligated to operate the service in a non-negligent fashion. If a private entity had undertaken that task—and if it had bungled that undertaking as the PAL did here—it would surely be liable under Florida law.

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

In enacting the Federal Tort Claims Act, Congress's "broad and just purpose" was "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable[.]" *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955). The FTCA was not hastily created. It was the culmination of more than thirty years of debate and discussion in Congress. It was drawn with numerous substantive limitations and administrative safeguards. But it did not immunize the government from the same standards of duty and care applied to private individuals. Quite the opposite. Under the FTCA and the Supreme Court cases interpreting it, the fortuity that the customer service representative at the PAL who negligently processed the tip was employed by the government, rather than by a private entity, is immaterial to the duty inquiry. Therefore, the question before the Court is straightforward: whether a *private person* acting as the FBI did in this instance owed a cognizable duty under Florida law. Well-settled principles of tort law clearly hold that the answer is yes.

The government attempts to obscure and distract from that key inquiry—relying on doctrines that do not apply in FTCA cases and invoking standards that Florida courts have never adopted. To set the record straight on a few of these obfuscations: this is not a case about the duties that law enforcement agencies owe under state law; the public duty doctrine does not apply in FTCA cases; and no Florida case has ever held that the third-party undertaking doctrine requires a showing that the defendant affirmatively sought to provide a service to a specific individual. Equally unpersuasive is the government's vision of dire consequences for federal law enforcement if the courthouse doors were open to this lawsuit. This case does not allege that the FBI owes a duty to the general public to investigate every tip or prevent every tragedy; rather, this case is about a unique and unprecedented tragedy in which the PAL's negligence deprived the FBI's capable agents and analysts of the opportunity to do their job. Moreover, in nearly every FTCA case— when the government operates lighthouses, fights fires, manufactures deadly substances, and conducts CIA sting operations—the government warns of the consequences of imposing a tort duty on it. But courts routinely reject these arguments, recognizing that there is no justification to read exemptions into the FTCA beyond those provided by Congress. Plaintiffs have adequately pled that a private citizen can owe a duty of care in similar circumstances under Florida law. No amount of sophistric reliance on inapplicable doctrines or parading of horribles may shield a federal actor from that same duty. The government's motion should be denied.

3

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

## FACTUAL BACKGROUND

Rather than recount the detailed facts of this case, Plaintiffs refer the Court to the allegations in the Complaint, and summarize the essential facts as follows. Prior to 2012, concerned citizens with information about potential threats to life could directly contact their local FBI field office, and could even speak directly with FBI agents and analysts. Compl. ¶ 20. In 2012, the FBI upended this system, and replaced it with the PAL. *Id.* ¶ 21. The FBI set up the PAL to serve as a centralized system for receiving and relaying tips received from the public. In so doing, the PAL undertook to serve as the nation's core hub, repository, and distribution point for tips about potential threats to life, including mass shootings and school shootings. *Id.* ¶¶ 23–33.

The PAL also specifically undertook to serve as the intake system and repository for the tip about Nikolas Cruz relayed by a concerned caller on January 5, 2018. *Id.* ¶¶ 40–55. This tip was extremely urgent and highly specific, both about the likelihood that Cruz would soon try to hurt or kill others, and about Cruz's likely target: his former high school in Parkland, Florida. *Id.* ¶ 55. In reliance on the PAL's undertaking to get the information into the right hands—and assured that the PAL would in fact do so—the caller explicitly forewent other efforts she had considered, such as contacting the Department of Homeland Security. *Id.* ¶¶ 56–64.

But the PAL did not, in fact, get the information to the right hands. The January 5 tip never reached the FBI's agents and analysts, including those at the Miami Field Office. These agents and analysts were therefore never able to assess, investigate, mitigate, or prevent the threat. And on February 14, 2018, Nikolas Cruz shot and killed Plaintiffs' decedents at Marjory Stoneman Douglas High School. *Id.* ¶¶ 83–91. After the shooting, the FBI made a series of extraordinary admissions. FBI officials told victims' families as well as the public that PAL failed to follow established protocols in handling the information received on January 5. The FBI also said that had the tip reached the Miami Field Office—the very place the tip would have gone directly had the PAL not been created—"appropriate investigative steps would have been taken." *Id.* ¶¶ 121–62. And in the days after the shooting, the FBI also admitted to Mr. Guttenberg that were it not for the mistakes the FBI made, his daughter would still be alive. *Id.* ¶¶ 124–127.

## ARGUMENT

**I.     Under the FTCA, the government has the same duties as a *private person* in like circumstances.**

Two related sections of the FTCA specify that the tort duties imposed on the United States are those that would be imposed on a private person under state law. The first is 28 U.S.C. §

1346(b), which imposes liability on the government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The other is § 2674, which says that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances."

A trilogy of Supreme Court cases—*Indian Towing*, *Rayonier*, and *Olson*—explain that for purposes of the duty inquiry in FTCA cases, courts must find "private person analogies" for government tasks. In doing so, courts must ignore the special role of government because, while other doctrines, such as the discretionary function exception, serve as substantive and administrative safeguards to governmental liability in FTCA cases, the duty element does not. The government therefore cannot escape liability by arguing that its employees were engaging in "uniquely governmental functions," which private citizens do not perform. The duties owed by federal employees—even for acts performed *only* by the government—are as broad as those owed by private individuals in similar circumstances. And because the relevant comparison is to *private* persons or entities, not state or municipal entities, courts cannot superimpose additional limitations on liability that states may afford their own state or municipal employees under state law.

The cornerstone of the Supreme Court's jurisprudence on the issue of duty and the private-person analog is *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). The facts are straightforward. The plaintiff's tugboat went aground after a lighthouse operated by the Coast Guard ran out of power. The plaintiffs brought a negligence claim against the United States under the FTCA for the Coast Guard's failure to maintain the lighthouse in working order. *Id.* Because only the Coast Guard operated lighthouses, the government argued that this function was "uniquely governmental" and that no private analog existed. *Id.* at 64. But the Court rejected this argument on the ground that "all Government activity is inescapably 'uniquely governmental,'" and it observed that the statutory phrase "under *like* circumstances" does not mean "under *the same* circumstances." *Id.* The Court concluded that the relevant private analog was the duty imposed on the private "good Samaritan": "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Id.* at 64–65. "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate the light and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order . . . ." *Id.*

5

In *Rayonier Inc. v. United States*, 352 U.S. 315 (1957), the plaintiffs alleged that their property was damaged by the U.S. Forest Service's negligent failure to control a forest fire. The government argued that there was no private analog because the state of Washington did not "impose liability on municipal or other local governments for the negligence of their agents acting in the 'uniquely governmental' capacity of public firemen." *Id.* at 318–19. The Court rejected the government's argument, reasoning that the relevant consideration is whether state law would impose liability on a "private person" rather than on a "municipal corporation or other public body" for "similar negligence." *Id.* at 319. Relying on the plain text of the Act, the Court also rebuffed the government's "warn[ing] that if it is held responsible for the negligence of Forest Service firemen, a heavy burden may be imposed . . . [because] a fire may destroy hundreds of square miles of forests and even burn entire communities." *Id.* at 320. The Court reasoned that "after long consideration, Congress, believing it to be in the best interest of the nation, saw fit to impose such liability on the United States in the Tort Claims Act," and thus "[t]here is no justification for this Court to read exemptions into the Act beyond those provided by Congress." *Id.*

Most recently, in a unanimous opinion in *United States v. Olson*, 546 U.S. 43 (2005), the Court reaffirmed the principles recognized in *Indian Towing* and its progeny. The case was brought by injured mine workers who claimed that the negligence of federal mine inspectors brought about a serious accident at an Arizona mine. The Ninth Circuit failed to find a private-sector analog for mine inspections; instead, it considered a state public-sector analog and held that liability attached to the federal government because Arizona law would make "state and municipal entities" liable in the circumstances alleged. The Supreme Court held that the Ninth Circuit was wrong on both scores. First, the Ninth Circuit erred in failing to find a *private*-sector analog for mine inspections. The Court reiterated its reasoning in *Indian Towing* that "the words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *Id.* at 46.

Second, the Ninth Circuit erred when it looked to a *public*-sector analog—*i.e.*, by imposing on the federal government the same tort duties Arizona imposes upon its own *state and municipal employees*. Relying on *Indian Towing* and *Rayonier*, the Court gave a goose-and-gander rationale: "even though both these cases involved Government efforts to *escape* liability by pointing to the *absence* of municipal entity liability, we are unaware of any reason for treating differently a plaintiff's efforts to *base* liability solely upon the fact that a State would impose liability upon a municipal (or other state governmental) entity." *Id.* at 46 (emphasis in original).

6

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Because the Ninth Circuit in *Olson* had attempted to *expand* the scope of liability to match that of municipal actors, the government, unsurprisingly, took the position that its liability should match that of a private person, not anything more. At the Supreme Court argument, the government described the lower court's error: "instead of applying private-person principles of liability, the Ninth Circuit looked to the state and governmental-entity principles of liability."[1] The Supreme Court justices were especially curious about the application of the principle in the law enforcement context, asking counsel for the United States, "So, even with the police officer, I have to find a private analog[?]," to which the government replied, "Yes, you do." When Chief Justice Roberts asked counsel for the United States to "[g]ive me an example where you think there's no private-person analog," she did not provide one. Instead, she explained, "Well, Mr. Chief Justice, we think it's often rare that there is no private-person analog, given this Court's decision in Indian Towing, which stresses -- that one should look to a private person in like circumstances." The Court agreed. In its unanimous opinion, the Court instructed the Ninth Circuit, on remand, to find a private person analogy like the one described in *Indian Towing*. *See Olson*, 546 U.S. at 47.

Despite the preeminence of the *Indian Towing* trilogy, the government's brief fails to mention any of these cases. Instead, the government misrepresents the applicable analysis in at least three ways. ***First***, it wrongly suggests that the question before this Court is "whether a private person analog exists." Mot. at 3 (citing *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990)). That is not the inquiry. Supreme Court precedent *requires* this Court to find a private person analogy. *See Olson*, 546 U.S. at 46 (explaining that where there is no *identical* private-person analogy, the FTCA "require[s] [courts] to look further afield"); *Zelaya v. U.S.*, 781 F.3d 1315, 1324 (11th Cir. 2015) ("Notwithstanding the[ ] conceptual difficulties" of finding a private person analog, the FTCA mandates a private-person analysis). ***Second***, and relatedly, the government fails to meaningfully engage in a private person analysis. The Plaintiffs' Complaint gave a nonexhaustive list of over a dozen examples of applicable private person analogs, and the government failed to confront any of them. ***Third***, the government obfuscates by relying primarily on the inapplicable "public duty doctrine," which limits the liability of state governmental actors, not private individuals and entities.

---

[1]     *See* Transcript of Oral Argument at 3–6, *U.S. v. Olson*, 546 U.S. 43 (2005) (No. 04-759) (*available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2005/04-759.pdf).

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

II.     **The government's motion relies on the public duty doctrine, defying the Supreme Court's FTCA jurisprudence and contradicting its litigation position in *Olson*.**

In defiance of clear Supreme Court precedent, the government's primary argument is that this Court should apply Florida's public duty doctrine. This doctrine limits the tort duties of *state* governmental entities, not private ones. *See Wallace v. Dean*, 3 So. 3d 1035, 1045 (Fla. 2009) ("[T]he public duty doctrine . . . relate[s] exclusively to the question of whether the *government* owes a duty of care to the individual plaintiff or group of plaintiffs as opposed to the general public[.]") (emphasis added).

Florida's public duty doctrine undergirds the government's entire brief.[2] But as the government must surely know, a state's public duty doctrine does not apply in FTCA cases. Not only is the government's position foreclosed by Supreme Court precedent, but it is also directly at odds with what the government represented to the U.S. Supreme Court in *Olson*: that state doctrines of governmental liability are inapplicable in FTCA cases, and that for purposes of the duty inquiry, courts must find a private-person analog. The government has tried to raise the public-duty defense at least twice since *Olson*. And both times, it has failed. *See Lumsden v. U.S.*, 555 F. Supp. 2d 580, 594–95 (E.D.N.C. 2008) (North Carolina's "'public duty' doctrine has no application to an FTCA action" because liability of state or local law enforcement officers "is irrelevant under the Federal Tort Claims Act"); *White v. U.S.*, 2014 WL 4782855, at *25 (D.S.D. Sept. 24, 2014) (same for South Dakota's public duty doctrine). This case should be no different.

III.    **The PAL owed Plaintiffs' decedents a duty under the undertaking doctrine.**

Although there is *generally* no duty to prevent the misconduct of third parties, under Florida law such a duty can arise under any of several exceptions. *See, e.g.*, *Vazquez v. Lago Grande Homeowners Ass'n*, 900 So. 2d 587, 593 (Fla. 3d DCA 2004) (collecting cases). Plaintiffs have sufficiently alleged several of these exceptions here: the undertaking doctrine, the zone of risk doctrine, and duties arising from mandatory internal protocols.

The FBI's first duty in this case arises under the undertaking doctrine. *See, e.g.*, Compl. ¶¶ 60, 165–73 (alleging undertaking). It is well-settled that "[w]henever one undertakes to provide a service to others . . . [the undertaker] thereby assumes a duty to act carefully and not put others at

---

[2]     *See, e.g.*, Mot. at 6, 10, 11, 14 (citing *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) (Florida's seminal public duty case); *Pierre v. Jenne*, 795 So. 2d 1062 (Fla. 4th DCA 2001) (public duty case); *Greer v. Ivey*, 242 F. Supp. 3d 1284 (M.D. Fla. 2017) (a case arising under 42 U.S.C. § 1983, *not* the FTCA, and decided on public duty grounds); *Manfre v. Shinkle*, 184 So. 3d 641 (Fla. 5th DCA 2016) (same).

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

undue risk of harm." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003). Undertakings can give rise to duties to the direct recipient of the undertaking, as well as to third parties. With regard to duties to third parties, Florida law expressly follows the standard set out in Section 324A of the Restatement (Second) of Torts. *See id.* It provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>> (c) the harm is suffered because of reliance of the other or the third person on the undertaking.

Florida is just one of many jurisdictions that follow the Second Restatement approach. Accordingly, courts in FTCA cases routinely find cognizable duties arising in a wide variety of undertakings. *See, e.g.*, *Indian Towing*, 350 U.S. at 65 (operation of a lighthouse); *Sowell v. U.S.*, 835 F.2d 1133 (5th Cir. 1988) (processing of allotment forms); *Neal v. Bergland*, 646 F.2d 1178 (6th Cir. 1981), *aff'd sub nom. Block v. Neal*, 460 U.S. 289 (1983) (supervision of construction of prefabricated home); *Merklin v. U.S.*, 788 F.2d 172 (3d Cir. 1986) (warning about radioactive materials); *Cross Bros. Meat Packers, Inc. v. U.S.*, 705 F.2d 682 (2d Cir. 1983) (grading meat for quality); *Appley Bros. v. U.S.*, 7 F.3d 720 (8th Cir. 1993) (inspection of grain warehouse).

**A.      Plaintiffs have satisfied the elements for an undertaking duty under § 324A.**

In essence, Section 324A provides that an undertaker may be liable in tort if two essential elements are met. The first element is an undertaking to "render services to another, which [the undertaker] should recognize as necessary for the protection of a third person[.]" The second element is physical harm to a third person resulting from the undertaker's failure to exercise reasonable care. This second element can be satisfied in one of three ways: the undertaker's negligence increases the risk of harm, the undertaker performs a duty owed by the "other" to the third person, and/or the "other" relies on the undertaking in a way that contributes to the harm.

***1.      The PAL undertook to render services to others including but not limited to the January 5 caller.***

As alleged in the Complaint, the FBI undertook to render services to the public, and specifically to the January 5 caller. Namely, the PAL undertook to serve as the central repository

and conduit for information regarding potential threats to life, and to handle and relay that information to the agency's agents and analysts. *See* Compl. ¶¶ 23–33, 166, 173, 178. The government does not appear to dispute, nor can it reasonably dispute, that the FBI engaged in this conduct or that this conduct amounted to an "undertaking." Indeed, in Florida and other jurisdictions that follow the Restatement, the fact of the "undertaking" itself is rarely in dispute. *See, e.g., Indian Towing*, 350 U.S. at 65 (undertaking was the government's operation of a lighthouse). Nor can it reasonably be disputed that this undertaking was to provide services "to another," or more precisely to "others," including in this instance the January 5 caller.

Moreover, the PAL's undertaking was explicitly and unmistakably "for the protection of . . . third person[s]." The FBI expressly set up the PAL as a service for the public to provide information about the types of threats the FBI is responsible for investigating, including threats of terrorism and violent crime. *See* Compl. ¶¶ 21–33. Therefore, the creation and operation of the PAL clearly meets the "undertaking" element of § 324A. The FBI "need not undertake the [PAL] service," but having done so, "it was obligated to use due care" in the undertaking. *Indian Towing*, 350 U.S. at 69. *See also DeLong v. Erie Cnty.*, 457 N.E.2d 717, 721 (N.Y. 1983) (having centralized its 911 call-routing system and thus "provide[d] a special emergency service," city owed duty to operate system in non-negligent way).

To the limited extent that the government addresses the "undertaking" element of § 324A, it appears to argue that the "services [rendered] to another" under § 324A must be "affirmative and specific." Mot. at 12. But this is not the standard in Florida law, and the government cites to no case articulating such a standard. Even if this were the standard, the Complaint satisfies it. By creating the PAL, the FBI rendered a service no less affirmative and specific than the Coast Guard's establishment of a lighthouse, *see Indian Towing*, 350 U.S. at 64, namely the service of operating as the central repository for information about threats including school shootings. Indeed, courts in Florida and elsewhere have recognized undertakings under similar factual circumstances, even in cases where the defendant is a municipal governmental actor.[3]

---

[3]     *See, e.g., St. George v. City of Deerfield Beach*, 568 So. 2d 931 (Fla. 4th DCA 1990) (duty could arise where 911 operator mishandled emergency call and failed to dispatch police officers to scene); *DeLong*, 457 N.E.2d at 721 (establishment of central 911 call-routing system gave rise to duty to 911 caller who was the victim of a burglary); *City of Kotzebue v. McLean*, 702 P.2d 1309 (Alaska 1985) (police officer who received 911 call from someone threatening to kill third person, but took twelve minutes to respond to the call, owed duty to third-party victim); *Austin v. City of Scottsdale*, 684 P.2d 151, 154 (Ariz. 1984) (duty could arise where police department failed to follow internal procedures for handling 911 calls, police took no action on threat to life, and plaintiff's decedent was stabbed).

10

The government also suggests that, in order for the undertaking doctrine to apply, the FBI need have "sought to provide a service to the *specific individuals* who were injured or killed by Nikolas Cruz[.]" Mot. at 13 (emphasis added). This is incorrect in at least two ways. First, § 324A addresses scenarios in which someone undertakes to provide services to one person (here, the callers to the PAL), which he should recognize as necessary for the protection of *third* persons (here, the victims of the shooting). Therefore, it is simply not necessary for the PAL to have undertaken to provide services to the victims of the shooting.[4]

Second, contrary to the government's suggestion, there is no requirement that the third persons be "specific individuals" or be known to the undertaker. This is yet another standard that the government invokes, but which has no basis in Florida law.[5] It is well-established in Florida that an undertaker can owe a duty to third parties that are unknown or unidentifiable at the time of the undertaking. "The voluntary undertaking doctrine simply stands for the proposition that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care. The undertaking of such an act foreseeably broadens the zone of risk *to include unidentified third parties*." *Dent v. Dennis Pharm., Inc.*, 924 So. 2d 927, 929 (Fla. 3d DCA 2006) (emphasis added, quotation marks omitted). *See also, e.g.*, *Kowkabany v. Home Depot*, 606 So. 2d 716 (Fla. 1st DCA 1992) (defendant who undertook to load timbers into vehicle owed duty to bicyclist struck by timbers protruding from vehicle window); *U.S. v. Stevens*, 994 So. 2d 1062, 1069–70 (Fla. 2008) (in a Florida-law FTCA case, government laboratory owed a duty of reasonable care "to members of the general public" to avoid an unauthorized release of anthrax).

The same is true in other jurisdictions following the Second Restatement. *See, e.g.*, *DiMarco v. Lynch Homes–Chester Cnty., Inc.*, 583 A.2d 422 (Pa. 1990) (where physician treats patient with contagious disease, physician owes duty to third parties to correctly inform patient about the contagious nature of the disease); *Kuehl v. Horner Lumber Co.*, 678 N.W. 809, 813 (S.D. 2004) (en banc) (lumber yard employees who loaded lumber onto customer's trailer owed duty under § 324A to third-party driver injured on the highway when lumber fell off the trailer).

---

[4]     Indeed, such undertakings are legally distinct from § 324A undertakings, and thus addressed in a separate section of the Restatement. *See* Restatement (Second) of Torts § 323.

[5]     Here, as elsewhere in its brief, government seems to be relying on Florida's public-duty doctrine. It argued that because "the creation of PAL and other 'public outreach efforts' are services rendered to the general public for purposes of law enforcement and public safety," "[t]hese are not services rendered 'to another' as required by Restatement § 324A." Mot. at 12 (citing 911 operator and other public duty cases). But the Restatement has no exception for services rendered for public safety purposes, and the public duty limitation does not apply.

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Even if Florida law required that the third persons for purposes of § 324A undertakings be specifically identifiable—and it does not—the facts of this case satisfy that novel requirement. Here, the PAL specifically undertook to handle a threat whose specific target was the students and teachers at Marjory Stoneman Douglas High School. The January 5 caller made clear to the PAL employee that Cruz had exhibited violence at school before and expressed specific concern that he would go to a school and "shoot the place up." Compl. ¶ 55. Moreover, the caller's concerns were corroborated by abundant and readily available indications that the School was the likely target of Cruz's violent proclivities. *See, e.g.*, Compl. ¶¶ 35, 78–82.

### 2. The January 5 caller relied on the PAL's undertaking.

As noted above, the second element of § 324A can be satisfied in any one of three ways. Here, Plaintiffs have alleged two of those three: reliance, and increasing the risk of harm. First, Plaintiffs allege that the public and specifically the January 5 caller *relied* on the PAL's undertaking to serve as the central repository and conduit of information concerning threats of mass shootings and school shootings. *See, e.g.*, Compl. ¶ 60–64,166, 168–69. The caller knew that Cruz posed an imminent and grave threat to human life. Specifically, she was concerned that Cruz would perpetrate a mass shooting at his former school. When she called the PAL, her objective was to get this information into the right hands. And after speaking to the PAL, she was assured that this information would find its way to capable agents who could evaluate it and determine whether the threat posed by Cruz merited intervention. *See id.* ¶ 59.

The government contends that the Complaint's allegations of reliance are insufficient, disparaging them as "speculative" and "conclusory." Mot. at 16, 17.[6] Given that the government characterizes its motion as a "facial" attack on the Complaint, this argument is perplexing and, indeed, inappropriate: a plaintiff's factual allegations must be accepted as true.[7] The Complaint alleges that the tipster relied on the PAL. The government says that the tipster did not. That is a factual dispute, properly left to the trier of fact. But even if Plaintiffs were required to buttress their

---

[6]     Indeed, the government's characterizations of these allegations border on accusing the Plaintiffs of acting in bad faith, since all allegations must have a good-faith basis. *See* Mot. at 16 (characterizing the allegations as "a clear effort to raise a factual issue requiring discovery"). Ironically, the government's accusation is itself mere speculation about Plaintiffs counsel's pre-suit efforts and investigation.

[7]     At this stage of the litigation, this Court cannot conclude that the January 5 caller did not rely on the PAL's undertaking, not only because that is a question of fact, but also because it is a question that is properly reserved for the merits stage of the litigation. *See Eaton v. Dorchester Development Inc.*, 692 F.2d 727, 733–34 (11th Cir. 1982) (dismissal for lack of duty on 12(b)(1) motions is inappropriate "when the basis for jurisdiction is also an element of plaintiffs' cause of action on the merits" and when "subject matter jurisdiction is . . . a question of fact").

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

allegations with additional evidence on a motion to dismiss—which they are not—the Complaint's allegations of reliance have ample evidentiary support, chiefly the transcript of the January 5 call itself and the fact that the tipster made no further outreach to any law enforcement agency between January 5 and February 14. And even were the Rules of Civil Procedure to cease to exist, Plaintiffs would have more than a good-faith basis to believe the allegation will bear out in discovery: the tipster herself told undersigned Plaintiffs' counsel that, following her call, she relied on the PAL's undertaking and rested easy, forgoing further actions to contact law enforcement or otherwise mitigate the threat posed by Cruz.

Second, the government yet again simply misstates the applicable legal standard by suggesting that the Restatement requires the PAL to have "*induced reasonable* reliance by the caller." Mot. at 16 (emphasis added). Even if the undertaking doctrine required some affirmative *inducement*—a proposition for which the government provides no authority—the caselaw is clear that *the undertaking itself* can satisfy the requisite inducement. *See, e.g.*, *Indian Towing Co.*, 350 U.S. at 64 (duty arose from maintenance of a lighthouse, with no additional affirmative inducement). Moreover, in Florida, and in most other states applying the Restatement, *reasonable* reliance is not required. *See Wallace*, 3 So. 3d at 1058 (Wells, J., dissenting) (arguing, in dissent, that "[r]easonable reliance" should be the standard in Florida).

Even if reasonable reliance were required, here the January 5 caller's reliance was reasonable, indeed more reasonable than the caller's reliance in *Wallace*. In *Wallace*, a 911 caller relied not on the police officer's relevant undertaking—to check on a nonresponsive neighbor— but rather on the police officer's *medical judgment* that the neighbor did not require immediate medical care. *Id.* (Wells, J., dissenting) ("it [was] unreasonable for the plaintiff to have relied on the medical expertise of any of [the officers]"). Here, the January 5 caller relied directly on the PAL's undertaking to appropriately relay the tip to the FBI's capable analysts and agents.[8]

### 3.        *The PAL increased the risk to Plaintiffs' decedents.*

The PAL's undertaking also contributed to the harm suffered by Plaintiffs' decedents by increasing the risk of such harm. Jurisdictions differ in their approach to the "increase the risk" variant of § 324A undertakings. The government cites to cases applying *Georgia* law, which hold

---

[8]        The government attempts to distinguish *Wallace*, apparently on the ground that representations made in a 911 call cannot give rise to reliance under § 324A.  But that is not what *Wallace* held. And courts in Florida and elsewhere have reached the opposite conclusion. *See* n.4, *supra.*

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

that "a risk is only increased when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed." *Howell v. U.S.*, 932 F.2d 915, 919 (11th Cir. 1991) (quotation marks omitted). But even Georgia courts "reject [the] contention that only affirmative acts, as opposed to mere omissions, can give rise to liability to third parties." *Urban Servs. Grp. v. Royal Grp.*, 671 S.E.2d 838, 840 (Ga. Ct. App. 2008) (defendant's failure to inspect sidewalks for ice increased risk that pedestrian would slip and fall).

More importantly, the law at issue here is that of Florida. And in Florida, when someone relies on the defendant's undertaking such that she foregoes steps to mitigate the risk to third parties, that reliance—without more—can satisfy the "increase the risk" variant of § 324A. *See, e.g.*, *Wallace*, 3 So. 3d at 1052; *U.S. v. Gavagan*, 280 F.2d 319, 328 (5th Cir. 1960). Moreover, Florida, unlike Georgia, recognizes an increased risk of harm even where the hazardous condition existed *prior to* or *independent of* the undertaking. *See, e.g.*, *City of Jacksonville v. Fla. First Nat. Bank of Jacksonville*, 310 So. 2d 19 (Fla. 5th DCA 1975), *cert. denied*, 339 So. 2d 632 (Fla. 1976) (city held liable for negligent failure of its police to protect children from abuse by violent-prone parent). The same is true in many other jurisdictions following the Second Restatement.[9]

Here, the FBI's undertaking to create the PAL and to operate the PAL as the nation's central repository for tips about threats to life increased the risk of harm to Plaintiffs' decedents in at least two ways. First, as detailed above, the January 5 caller relied on the PAL's undertaking and therefore forewent additional steps that would have mitigated or prevented the harm to Plaintiffs' decedents. This fact alone satisfies § 324A under *Wallace*.[10] Second, had the FBI not undertaken to create the PAL to function as the central repository for receiving and conveying threats about the public, callers would still have been able to directly contact their local field office

---

[9]     *See, e.g.*, *Shipe v. Chesapeake Bay Fishing Parties, Inc.*, 940 F. Supp. 130, 135 (D. Md. 1996) (duty could arise where insurer failed to inform boat operator that boat was in unseaworthy condition); *Mukhtar v. Latin Am. Sec. Serv.*, 139 Cal. Rptr. 3d 563, 566–67 (Cal. Ct. App. 4th 2006) (security service's failure to furnish guard at convenience store could increase risk that cashier would be attacked by patrons); *Regions Bank v. Joyce Meyer Ministries, Inc.*, 15 N.E. 3d 545 (Ill. Ct. App. 2014) (defendant who undertook to investigate death threats directed at plaintiffs' decedents, increased the danger to them); *Ironwood Springs Christian Ranch, Inc. v. Walk to Emmaus*, 801 N.W.2d 193 (Minn. Ct. App. 2011) (defendant's undertaking to attend to ice on the ground increased risk of slip-and-fall by causing others to forego salting or chopping ice themselves); *Sabia v. State*, 669 A.2d 1187, 1194 (Vt. 1995) (agency, which was aware of father's sexual abuse of his daughters but failed to assist them, increased the risk of harm); *Burns v. Gagnon*, 727 S.E.2d 634, 644 (Va. 2012) (defendant vice principal, who was warned that student would be involved in a fight but failed to prevent it, could be found to have increased risk of harm to injured classmate).

[10]     *See* Restatement (Second) of Torts § 324A cmt. e (where one "forgo[es] other remedies or precautions" in reliance on the undertaker, "the harm results from the negligence as fully as if [the undertaker] had created the risk").

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346       www.podhurst.com

concerning threats to human life. *See* Compl. ¶¶ 20–21 (explaining the FBI's transition to the PAL system). In other words, had the PAL not been created, the January 5 caller would have been able to directly provide information to the Miami Field Office. And had the FBI's Miami-based agents received this information, they would have taken appropriate investigative steps. Indeed, the FBI admitted as much in a public statement. *See* Compl. ¶ 181–83. The government has not denied as much in its motion to dismiss, or indeed at any point in this litigation.

   **B.     *Wallace v. Dean* supports the Plaintiffs' position.**

   The Florida Supreme Court's decision and analysis in *Wallace* merits specific attention, because the government relies on this case extensively in its motion. Far from supporting the government's argument, *Wallace* undermines it. At the outset, we note that *Wallace* is a Florida case about the tort liability of local police officers. *See* 3 So. 3d at 1047. Therefore, the Court considered the public duty doctrine and other factors limiting the officers' duties toward the decedent. Of course, these considerations protect only state governmental actors, and are therefore inapposite to the FTCA duty inquiry. In other words, the duties owed by the federal government under the FTCA are *broader* than duties recognized in public duty cases such as *Wallace*.[11]

   Despite these restrictions, the *Wallace* Court concluded that the officers *did* owe a duty to the plaintiff's decedent. *Id.* at 1052. And the Court reached this conclusion on materially similar facts to the facts of the instant case. In *Wallace*, police officers responded to a 911 call from a woman concerned about the wellbeing of her next-door neighbor. The officers found the neighbor lying in bed, utterly unresponsive. The 911 caller therefore suggested that the officers call an ambulance, but the officers rebuffed this request and assured the caller that this was unnecessary. Relying on this assurance, the 911 caller did not check on the neighbor again until the next morning. Although the neighbor was eventually taken to the hospital, she died several days later, allegedly because of the overnight delay in receiving medical attention. *See id.* at 1043. Here, the PAL employee, like the officers in *Wallace*, rendered services to another—here, the January 5 caller, and in *Wallace*, the concerned 911 caller. In both cases, the callers relied on the undertakers' assurances that no further action was necessary. Tragically, in both cases, this reliance contributed to the harm suffered by the plaintiffs.

---

[11]     The same is true for other public duty cases cited throughout this brief and the government's motion. *See, e.g.*, *Austin*, 684 P.2d at 154; *DeLong*, 457 N.E.2d at 721; *St. George*, 568 So. 2d at 932.

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

*Wallace* does not stand alone. Courts in other jurisdictions, and at least one state supreme court, have similarly held that police officers can assume a duty under the undertaking doctrine. *See Fochtman v. Honolulu Police & Fire Dept.*, 649 P.2d 1114 (Haw. 1982). In *Fochtman*, a concerned resident called 911 after noticing a flashlight beam that, in his judgment, indicated that someone was in trouble on a nearby ridge. Officers assured the caller that they would "check it out." But they did not. In fact, they did not investigate until the following morning, and when they did, they found the lifeless bodies of two boys who had fallen from the top of the ridge. On these facts, the Hawaii Supreme Court concluded that there was a genuine issue of material fact as to the officers' duty, and specifically as to whether the officers "actually worsened the situation . . . by preventing [the caller] from taking further steps to render aid and assistance." *Id.* at 1117.

In short, even where courts have considered the potential liability of *state* law enforcement agencies, they have concluded that such agencies can assume legally cognizable duties. The potential liability of *federal* law enforcement agencies—whose duties under the FTCA are not circumscribed by the public duty doctrine—are only broader. *See White*, 2014 WL 4782855 at *8.

## IV.   There is a duty because the Plaintiffs' decedents were in the foreseeable zone of risk.

### A.   The "foreseeable zone of risk" inquiry is governed by *McCain*.

In *McCain v. Florida Power Corp.*, 593 So. 2d 500, 501 (Fla. 1992), the Florida Supreme Court expanded the concept of duty in Florida law and made foreseeability the sole determinant of whether a duty exists. There, the plaintiff was injured when a trencher he was operating struck an underground power cable. Florida Power had negligently marked the accident area as "safe." After the jury returned a verdict for plaintiff, the Second District reversed and remanded for entry of a directed verdict for Florida Power, concluding the injury was not foreseeable.

The Florida Supreme Court disagreed and reinstated the verdict, holding that "Florida Power was clearly under a duty to take reasonable actions to prevent the general type of injury that occurred here." *Id.* at 502. The district court had improperly merged the elements of duty and proximate causation "into a single hybrid 'foreseeability' analysis." *Id.* Unlike proximate causation, which is a factual requirement that must be proved to win the case, the duty element is a "minimal threshold legal requirement for opening the courthouse doors" that "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* Therefore, a legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming others." *Id.* at 503. Moreover, that duty includes the

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

obligation "to lessen the risk or take sufficient precautions to protect others from the harm that the risk poses," and "as the risk grows greater, so does the duty, because the risks to be perceived defines the duty that must be undertaken." *Id.* The court held, therefore, that Florida Power was under a greater-than-usual duty of care in proportion to the greater-than-usual zone of risk associated with its business enterprise. *Id.* ("Electricity has unquestioned power to kill or maim.").

### B.    Florida case law imposes a duty to warn or protect against foreseeable criminal conduct by third parties, even where there is no special relationship.

The Florida Supreme Court has recognized that the "foreseeable zone of risk" analysis can encompass a duty of reasonable care to unknown members of the general public to prevent criminal acts of third parties. *See Stevens*, 994 So. 2d at 1069. The *Stevens* case is particularly instructive because it is an FTCA case in which the Court answered a certified question from the Eleventh Circuit on the existence of duty. In *Stevens*, unknown individuals mailed letters containing anthrax to locations in several cities, including to plaintiff Stevens' workplace. Stevens died after inhaling the anthrax, and his estate sued the United States in federal court, alleging that the anthrax could be traced to a federal research facility. The complaint alleged that the government failed to provide adequate security for the handling or shipping of anthrax, and that the anthrax was stolen either in transit or from another facility to which the materials had been sent. The complaint did not describe the relationship between the government and the people who stole and mailed the anthrax.

The United States moved to dismiss, arguing there, as it does here, that "it could not be liable for any third party criminal activity allegedly occasioned by negligent security practices because it owed no duty of protection to Stevens, a stranger, and did not have a duty or ability to control the unidentified third party tortfeasor or tortfeasors responsible for intercepting or mailing the anthrax." *Id.* at 1065. It also argued there, as it does here, that the plaintiffs had alleged only omissions—failing to secure the anthrax—rather than affirmative acts that created a new risk. *Id.* at 1069 n.4. The federal district court rejected these arguments and denied the government's motion, concluding that Stevens' claim fell under Florida's "foreseeable zone of risk" theory. It held that a reasonable laboratory operator would understand that the public would be exposed to an unreasonable risk of harm unless it adequately guarded against the risk, and that the third party's death was a foreseeable consequence of the failure to use reasonable care in adopting and implementing security measures to guard dangerous materials. *Id.* at 1069.

On appeal, the Eleventh Circuit issued an opinion that certified a question to the Florida Supreme Court, which held that a laboratory that handles ultrahazardous materials "does owe a

17

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

duty of reasonable care to members of the general public to avoid an unauthorized interception and dissemination of the materials." *Id.* at 1070.[12] In the opinion, the Florida Supreme Court "reaffirm[ed] [its] previous declarations that the 'foreseeable zone of risk' test discussed in *McCain* is the test to be applied under Florida law to determine whether a duty exists[.]" *Id.* at 1067. It also concluded that the district court appropriately turned to Restatement §§ 302 and 302B "for guidance in determining whether a duty exists under Florida law." *Id.* at 1068. These sections recognize that negligence can arise from an act or omission that involves an unreasonable risk of harm to another through the foreseeable action of a third party, even though the third party's conduct is criminal. Ultimately, the Court agreed with the Eleventh Circuit "that the 'complex factual pattern at hand' presents a unique challenge to the courts that must ultimately be resolved upon the facts as developed in the trial court." *Id.* at 1069. But, as in *McCain*, duty is a "*minimal threshold*" requirement, and Stevens' allegations are sufficient to open the courthouse doors. *See id. See also Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1371 (S.D. Fla. 2012) ("Under the 'foreseeable zone of risk' analytical paradigm set out in *McCain,* a duty to warn or protect against criminal conduct precipitated by third persons may arise where the risk is foreseeable to defendant, regardless of defendant's control over instrumentality or person causing the harm.").[13]

Here, Plaintiffs have alleged facts to meet the "minimal threshold" showing of duty under *McCain*. When the FBI created the PAL, it acted in way that created a risk: by *eliminating* the ability of concerned citizens to contact their local FBI field offices directly and *rerouting* these calls to PAL employees in West Virginia, the FBI created a risk that information about imminent threats would not be properly processed and transmitted to those equipped to act. *See* Compl. ¶¶ 20, 21. Concerned citizens—including the tipsters who warned about Cruz—rely on the PAL to appropriately process the information and pass it along to those who will investigate it and save lives. Were it not for the FBI's creation of the PAL, the tipster would have sought assistance elsewhere, or would have been able to directly contact her local FBI field office. *Id.* ¶ 60. And by

---

[12]    Although the case involved negligent security practices regarding ultra-hazardous materials, the case was decided on general principles of Florida negligence law, rather than strict liability for ultra-hazardous materials. *See id.* at 1071 (Wells, J., dissenting) (lamenting that the case was not decided under strict liability principles).

[13]    Omissions can give rise to an unreasonable risk of harm to another, engendering a duty to prevent the harm. *See, e.g., Couzado v. U.S.*, 105 F.3d 1389 (11th Cir. 1997) (airline crew detained in Honduras stated FTCA claim because it was foreseeable that the crew "could be endangered by the failure of the government to notify the Honduran authorities" that the plane was involved in sting operation); *Herndon v. Shands Hosp.*, 23 So. 3d 802 (Fla. 1st DCA 2009) (hospital owed duty to public to prevent drug theft); *Borda v. East Coast Ent., Inc.*, 950 So. 2d 488 (Fla. 4th DCA 2007) (club owed duty to protect patron against risk of criminal assault created by ejection from bar).

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346       www.podhurst.com

failing to transmit the information about Cruz—in violation of mandatory protocols—the PAL made plaintiffs' position worse. *See Gavagan*, 280 F.2d at 328 (harm was increased where bystanders did not take action because they relied on Coast Guard's celebrated skill).

**V.      The FBI's adoption of mandatory directives establishes a duty of care.**

In Florida, internal protocols that have been adopted as "standards of conduct" give rise to an "independent duty of care" upon which a claim of negligence can be predicated. *See Pollock v. Fla. DHP*, 882 So. 2d 928, 937 (Fla. 2004); *see also City of Jacksonville v. DeRay*, 418 So. 2d 1035, 1037 (Fla. 1st DCA 1982) ("scrutiniz[ing] the portions of the Manual introduced at trial and included in the record" to determine whether city "was in compliance with the mandatory provisions," and thus, whether it had breached duty of care). The Complaint alleges that the FBI had "a duty to comply with mandatory directives" governing how information on school shootings and other threats was to be handled," and that the FBI "adopted those procedures as the standard of conduct." Compl. ¶ 176. Specifically, the PAL had a duty under established protocols to, among other things, forward the information received to the Miami Field Office, to law enforcement in Parkland, and to Cruz's foreseeable targets—the students and teachers at Marjory Stoneman Douglas. *See id.* ¶ 178. The assumption of these mandatory obligations created a duty of care. *See Moody v. U.S.*, 774 F.2d 150, 156 (6th Cir. 1985) ("It is clear that federal regulations can create the duty or undertaking which state law requires to be performed with reasonable care.") (citing cases); *Florence v. Goldberg*, 375 N.E.2d 763, 767 (N.Y. 1978) (adoption of rules relating to provision of crossing guards evidenced that police assumed duty to supervise school crossings).

**VI.      The government's arguments are inapposite.**

Much of the government's motion is devoted to topics that are immaterial. When the brief is not citing public duty cases, it is addressing theories of liability—from premises liability to a general duty to stop crime—that Plaintiffs neither invoke nor allege. As detailed above, the government's motion puzzlingly invokes the public duty doctrine, which shields *state* governmental entities from tort liability. But that doctrine is simply irrelevant to the duty question that is presently before the court. *See, e.g.*, *Indian Towing*, 350 U.S. at 65 (the FTCA is "not self-defeating by covertly embedding the casuistries of municipal liability for torts").[14]

---

[14]      Even if Florida's public duty doctrine applied—and it does not—Plaintiffs have alleged a recognized exception to the doctrine. Specifically, Plaintiffs alleged that the FBI owed the victims of the Parkland shooting a special duty to intervene. *See* Compl. ¶ 177. That exception applies whenever "law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to

Moreover, although the government relies extensively on *Pollock* and asserts that it is a private-person-analog case, that is only partly correct. *Pollock* concerned the Florida Highway Patrol's (FHP) alleged negligence in failing to remove a stalled vehicle from a highway. The Florida Supreme Court decided *Pollock* on two grounds, both of which are inapplicable here. First, adopting Florida's variant of a private-person-analog analysis, the Court concluded that there could be no "premises liability" because the FHP did not own or control Florida's highways. 882 So. 2d at 933–34. But here, Plaintiffs have not alleged premises liability. Second, expressly invoking Florida's public duty doctrine, the Court held that the FHP's law enforcement role could not give rise to a tort duty. *Id.* at 935. But here, as in all FTCA cases, the public duty doctrine is inapplicable.

Even where the government does not rely on the public duty doctrine, its arguments and citations are inapposite for a different reason. Namely, much of the government's motion addresses theories of duty that the Plaintiffs neither alleged nor invoked. For example, contrary to the government's apparent misapprehension, the Plaintiffs do not allege that the FBI had a special relationship with the victims of the shooting. Indeed, the government itself acknowledges that "the Complaint does not allege . . . a special relationship." Mot. at 4. It is therefore perplexing that the government devotes roughly three pages of briefing to denying the existence of a special relationship. *See id.* at 7-10. Nor do Plaintiffs allege that the FBI, or indeed any other entity, has a *general* duty to prevent the criminal acts of another. In Florida and elsewhere, in certain circumstances a duty to prevent criminal acts *can* arise under § 324A, 302, and 302B.[15]

Especially inapposite is the government's extensive reliance on *Abad v. G4S Secure Solutions, Inc.*, --- So. 3d ----, 2020 WL 1546443 (Fla. 4th DCA Apr. 1, 2020). The central issue on appeal in *Abad* was whether a security company's negligent hiring of the eventual perpetrator of the Pulse nightclub shooting created a "foreseeable zone of risk *to the general public*." *Id.* at *2 (emphasis added). *See also id.* at *3 (considering whether the company "created a broader zone of

---

exist . . . or otherwise subjecting them to danger." *Pollock*, 882 So. 2d at 935. Here, the PAL was specifically aware of the imminent danger posed by Cruz and permitted this danger to exist. Accordingly, the FBI owed Cruz's foreseeable victims a special duty to intervene, independent of its duties as an undertaker. Contrary to the government's contentions, this duty is distinct from the "separate 'special relationship test,' which appears to have been drawn from contract law." *Wallace*, 3 So. 3d at 1048.

[15]      *See, e.g., Vazquez*, 900 So. 2d 587, 593 (Fla. 3d DCA 2004) (a "duty to guard against crime" can be "founded upon particular undertakings"); *Stevens*, 994 So. 2d at 1069–70 (recognizing that "negligence liability may be imposed on the basis of affirmative acts which create an unreasonable risk of harm by creating a foreseeable opportunity for third party criminal conduct"); *Regions Bank*, 15 N.E. 3d at 549 (noting that although "[o]rdinarily" there is no such duty, it can arise in the context of a voluntary undertaking); *Harris v. Pizza Hut of La.*, 455 So. 2d 1364, 1371 (La. 1984); *Martin v. McDonald's Corp.*, 213 N.E. 2d 1073 (Ill. Ct. App. 1991).

risk to the *general public* and imposed a legal duty on it"); *id.* (addressing argument that defendant "created a foreseeable zone of risk to the *general public* that rose to a legal duty to the *general public*") (emphasis added). But Plaintiffs have alleged neither a foreseeable zone of risk to the general public, nor a duty owed to the general public.

The government also cites to *LA Fitness Intern., LLC v. Mayer*, 980 So. 2d 550 (Fla. 4th DCA 2008), for the proposition that "[a]lleging that a defendant should have acted but failed to do so is insufficient to establish a duty under the voluntary undertaking doctrine." Mot. at 13. Even if this were an accurate description of the law, it fails as a description of this case and of Plaintiffs' Complaint. Plaintiffs have not merely alleged that the government "should have" done more to protect the victims of the Parkland shooting. Rather, Plaintiffs have specifically alleged that the PAL *undertook* to serve as the central repository and distribution mechanism for tips about threats to human life. This undertaking clearly gives rise to cognizable duties under Florida law.

Moreover, *LA Fitness* is distinguishable in at least two crucial respects. First, in *LA Fitness*, unlike here, the plaintiff did not allege or establish that the defendant increased the risk of harm or that anyone relied on the defendant's undertaking. 980 So. 2d at 561. In other words, the *LA Fitness* plaintiff simply failed to allege an essential element of a § 324A duty. Second, *LA Fitness* was decided before *Wallace*, which reached the opposite result on materially similar facts. In *LA Fitness*, the Fourth District Court of Appeal concluded that a private individual's undertaking to check the pulse of a victim of cardiac arrest does not give rise to a duty to perform CPR if CPR is indicated. Whatever the merits of this conclusion, it is impossible to square with the Florida Supreme Court's decision in *Wallace*, imposing a duty on police officers to call an ambulance after checking on an unresponsive neighbor.

## CONCLUSION

The question before this Court on the government's motion to dismiss is whether a private person acting as the PAL did in this instance would owe a duty to Plaintiffs' decedents under Florida law. Longstanding principles of tort law compel an answer in the affirmative. Although the PAL's conduct and admitted failings in this case are extraordinary and unprecedented, the *duties* owed by the PAL are well-settled in Florida and elsewhere, both in the private-person context and even under the more restrictive analysis of public-duty cases. Plaintiffs' allegations are therefore more than sufficient to overcome the government's facial attack. Accordingly, the government's motion should be denied.

**Podhurst** Orseck **P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   www.podhurst.com

## REQUEST FOR HEARING

The Plaintiffs hereby respectfully request a hearing before this Court due to the complexity of the legal questions at issue, the parties' apparently extensive disputes about the applicable legal standards and doctrines, and the dispositive nature of the government's motion and its importance to all parties to this litigation. Plaintiffs estimate that one hour of argument, in total, will be sufficient.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and any other electronic filer as of the time of the filing.

By: /s/ Kristina M. Infante_____
Kristina M. Infante


Respectfully submitted,

**PODHURST ORSECK P.A.**
Counsel for Frederic and Jennifer
*Guttenberg, as Co-Personal Representatives
of the Estate of Jaime Guttenberg*
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800

By: /s/ Kristina M. Infante_____
Kristina M. Infante
FL Bar No: 112557
Steven C. Marks
FL Bar No. 516414
Pablo Rojas
FL Bar No. 1022427


**RENNERT VOGEL MANDLER &
RODRIGUEZ, P.A.**
*Counsel for Philip and April Schentrup, as
Co-Personal Representatives of the Estate of
Carmen M. Schentrup*
Miami Tower
100 S.E. Second Street, Suite 2900
Miami, Florida 33131
Telephone: (305) 577-4177

Facsimile: (305) 533-8519
E-mail: jtew@rvmrlaw.com
rstein@rvmrlaw.com
dperez@rvmrlaw.com

By /s/ Robert M. Stein
Robert M. Stein, Esq.
Florida Bar No. 93936
Jeffrey A. Tew, Esq.
Florida Bar No. 121291

**THE HAGGARD LAW FIRM**
*Attorneys for Plaintiffs, Stacy Lippel,*
*Manuel Oliver, Patricia Padauy, and Linda*
*Beigel Schulman*
330 Alhambra Circle
Coral Gables, FL 33134
305-446-5700
Fax: 305-446-1154
Email: clm@haggardlawfirm.com

By: /s/Christopher Lang Marlowe
   Christopher Lang Marlowe, Esq.

**Kelley | Uustal, PLC**
*Attorneys for Plaintiffs Alhadeff, Laman,*
*Grady, Fuentes, and Mayor*
500 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33301
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
rwk@kulaw.com
klw@kulaw.com

By: */s/ Kimberly L. Wald*
   Robert W. Kelley, Esquire
   Florida Bar No. 328569
   Kimberly L. Wald, Esquire
   Florida Bar No. 112263

**TRACY CONSIDINE, P.A.**
*Counsel for Shara Kaplan*
1 Sleiman Parkway, Suite 210
Jacksonville, Florida 32216

Telephone No.: (904) 636-9777
Facsimile No.: (904) 636-5665
E-mail: tconsidine@tcjaxlaw.com
jcolucci@tcjaxlaw.com

By: /s/Tracy J. Considine
Tracy J. Considine, Esq.
Florida Bar No.: 599816

*Counsel for Andrew Pollack:*
**BRILL & RINALDI, THE LAW FIRM**
17150 Royal Palm Boulevard, Suite 2
Weston, Florida 33326
Telephone: (954) 876-4344
Facsimile: (954) 384-6226

By: /s/David W. Brill
David W. Brill, Esq.
Florida Bar No.: 959560
Primary e-mail: david@brillrinaldi.com
Secondary e-mail: yamile@brillrinaldi.com
Joseph J. Rinaldi, Jr., Esq.
Florida Bar No.: 581941
Primary e-mail: joe@brillrinaldi.com
Secondary e-mail: yamile@brillrinaldi.com

–       AND –

**JOEL S. PERWIN, P.A.**
Alfred I. Dupont Building, Suite 1422
169 E. Flagler Street
Miami, Florida 33131
Telephone: (305) 779-6090
Facsimile: (305) 779-6095
By: /s/Joel S. Perwin
Joel S. Perwin, Esq.
Florida Bar No.: 316814
Primary e-mail: jperwin@perwinlaw.com
Secondary email: sbigelow@perwinlaw.com

*Counsel for Plaintiffs, Annika Dworet and
Mitchell Dworet, as Parents and Natural
Guardians of Alexander Dworet, a minor*

By: /s/ Alan Goldfarb
ALAN GOLFARB, P.A.

24

Miami Tower, Suite 4500
100 S.E. 2nd Street
Miami, FL 33131
Phone: 305-371-3111
Fax: 305-577-8375
agoldfarb@goldfarbpa.com

*Co-Counsel for Plaintiffs, Annika Dworet
and Mitchell Dworet, as Parents and
Natural Guardians of Alexander Dworet, a
minor*

By: /s/ Michael Goldfarb
**GOLDFARB LAW, P.A.**
2800 Ponce de Leon Blvd.
Suite 1100
Coral Gables, FL 33134
Phone: 305-443-3200
Fax: 305-428-2418

michael@goldfarblaw.com
dappleby@goldfarbpa.com
ablanco@goldfarbpa.com

**COLSON HICKS EIDSON, P.A.**
*Counsel for Plaintiffs, Max Schachter, as
Personal Representative of the Estate of
Alexander L. Schachter, and Benjamin
Wikander*
255 Alhambra Circle, PH
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com
julie@colson.com
curt@colson.com

By: */s/ Patrick Montoya*
Patrick S. Montoya
FL Bar No. 0524441
Julie Braman Kane
Fla. Bar No. 980277
Curtis B. Miner
FL Bar No. 885681
Julie Braman Kane
Fla. Bar No. 980277

25

**GROSSMAN ROTH YAFFA COHEN**
*Attorneys for Plaintiffs, Ashley Maria Baez, a minor, by and through her Parents and Natural Guardians, Katherine Baez and Juan David Baez; Isabel Chequer, Anthony and Jennifer Montalto, as Co-Personal Representatives of the Estate of Gina Rose Montalto, deceased, and individually; and Kong Feng Wang a/k/a Jacky Wang and Hui Ying Zhang a/k/a Linda Wang, as CoPersonal Representatives of the Estate of Peter Wang, deceased, and individually*
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL 33134
T: 305-442-8666
szg@grossmanroth.com
aag@grossmanroth.com

By: */s/ Alex Arteaga-Gomez*
Stuart Z. Grossman, Esq.
Fla. Bar No. 156113
Alex Arteaga-Gomez, Esq.
Fla. Bar No. 18122

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com