UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CONSOLIDATED ACTION

Case No. 18-62758-CIV-DIMITROULEAS
Case No. 19-61623-CIV-DIMITROULEAS
Case No. 20-60303-CIV-DIMITROULEAS
Case No. 20-60306-CIV-DIMITROULEAS
Case No. 20-60307-CIV-DIMITROULEAS
Case No. 20-60308-CIV-DIMITROULEAS
Case No. 20-60310-CIV-DIMITROULEAS
Case No. 20-60311-CIV-DIMITROULEAS
Case No. 20-60317-CIV-DIMITROULEAS
Case No. 20-60319-CIV-DIMITROULEAS
Case No. 20-60322-CIV-DIMITROULEAS
Case No. 20-60325-CIV-DIMITROULEAS
Case No. 20-60326-CIV-DIMITROULEAS
Case No. 20-60327-CIV-DIMITROULEAS
Case No. 20-60328-CIV-DIMITROULEAS
Case No. 20-60330-CIV-DIMITROULEAS
Case No. 20-60331-CIV-DIMITROULEAS
Case No. 20-60332-CIV-DIMITROULEAS
Case No. 20-60333-CIV-DIMITROULEAS

IN RE: MARJORY STONEMAN DOUGLAS
HIGH SCHOOL SHOOTING FTCA LITIGATION

_____/

# REPLY IN FURTHER SUPPORT OF
# DEFENDANT UNITED STATES' MOTION TO DISMISS

## INTRODUCTION

In its Motion to Dismiss, the United States demonstrated that the Plaintiffs' Consolidated Verified Amended Complaint ("Complaint") fails to state a legally cognizable claim under the Federal Tort Claims Act ("FTCA"). In their opposition brief, Plaintiffs raise six arguments, all of which either misconstrue the Government's argument or misrepresent Florida law. Consequently, these consolidated actions should be dismissed for lack of subject matter jurisdiction.

### I. The United States has not asserted a "uniquely governmental function" defense.

Plaintiffs first contend that the United States "cannot escape liability by arguing that its employees were engaging in 'uniquely governmental functions,' which private citizens do not perform." ECF No. 219 at 5. Plaintiffs cite *Indian Towing Co. v. United States* and its progeny, which rejected the notion that, because the government was performing an activity for which no private person analog existed, it was immune from suit under the FTCA. *Id*. (citing *Indian Towing Co. v. United States*, 350 U.S. 61 (1955); *Rayonier Inc. v. United States*, 332 U.S. 315 (1957); *United States v. Olson*, 546 U.S. 43 (2005)). Rather, in interpreting the "private person" standard under 28 U.S.C. § 2674, the Supreme Court emphasized that "the words 'like circumstances' do not restrict a court's inquiry to the same circumstances, but require it to look further afield." *Olson* 546 U.S. at 46 (citing *Indian Towing*, 350 U.S., at 64.).

Plaintiffs, however, misconstrue the United States' argument. The United States does not contend that the FBI's conduct is not actionable under the FTCA because it was engaged in uniquely governmental activities. Rather, it argues that, because a private party would not owe a duty of care to Plaintiffs in similar circumstances under Florida law, the United States likewise would not owe a duty. Courts have observed this distinction since *Olson*. *See, e.g.*, *Lippman v. City of Miami,* 622 F. Supp. 2d 1337 (S.D. Fla. 2008) (finding a uniquely governmental function but, "[f]or the benefit of a full record," also finding no duty of care under Florida law); *Barnes v. United States*, 448 F.3d 1065, 1067 (8th Cir. 2006) (noting that plaintiff was "eminently correct in relying on *Indian Towing* to show that the United States is not immune from suits under the FTCA merely because it was undertaking a uniquely governmental function" but nonetheless finding no owed duty under Missouri's good Samaritan doctrine). As detailed below, the United States does not raise a "uniquely governmental function" argument merely by citing cases adjudicated under Florida law that involved state governmental entities. Instead, the United

States argues that, under the private person analog, no duty exists under Florida law for which the United States could be held liable.[1]

## II. Plaintiffs conflate the duty and sovereign immunity analyses to argue that the United States relied on Florida's "public duty doctrine."

Plaintiffs next argue that the United States inappropriately relied on Florida's public-duty doctrine, which "limits the tort duties of *state* governmental entities, not private ones." ECF No. 219 at 8. Citing *Wallace v. Dean*, which referred to "the public-duty doctrine," 3 So. 3d 1035, 1045 (Fla. 2009), Plaintiffs reason that, because the United States' conduct must be compared to private individuals rather than state actors, it cannot limit its liability by citing doctrines afforded only to state governmental entities. Indeed, Plaintiffs go so far as to argue that "the duties owed by the federal government under the FTCA are *broader* than duties recognized in public duty cases such as *Wallace* [*v. Dean*]." ECF No. 219 at 15.

In this regard, Plaintiffs conflate the duty and sovereign immunity analyses, and once again misconstrue the United States' argument. Similar to the FTCA, the Florida Tort Claims Act waives the state's sovereign immunity for actions in tort "in the same manner and to the same extent as a private individual under like circumstances." Fla. Stat. § 768.28. The Florida Supreme Court has reiterated that the statute "did not establish any new duty of care for government entities. The statute's sole purpose was to waive that immunity which prevented recovery for breaches of existing common law duties of care. . . . This effectively means that the identical existing duties for private persons apply to government entities." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985).

In assessing the State's potential liability under the "private person analog" standard, the Florida Supreme Court has emphasized that "there is not now, nor has there ever been, any common law duty for *either a private person or a government entity* to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law

---

[1] Plaintiffs also claim that the United States "wrongly suggests that the question before this Court is 'whether a private person analog exists.'" ECF No. 219 at 7. But, as explained above, the United States did not argue that no private person analog existed. Rather, the Government framed the issue as whether a duty existed through the lens of the private person analog. ECF No. 206 at 4 ("Thus, the Court must determine whether the relevant state law, in this case Florida negligence law, imposes an analogous duty of care on a private person under like circumstances.").

2

duty to prevent the misconduct of third persons." *Id*. at 918.  As emphasized in *Pollock v. Florida Dept. of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004), the lack of a common law duty is a separate and distinct issue from whether the government actor is immune from suit or his conduct is otherwise privileged under state law: "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached."  Upon concluding that no statutory or common law duty existed, the *Pollock* court deemed it unnecessary to resolve whether the state's sovereign immunity would have precluded the case if a duty were to have been found.  *Id*. at 938; *see also Wallace*, 3 So. 3d at 1044 ("We thus consider whether the Sheriff owed the decedent a common-law duty of care pursuant to traditional principles of tort law *without having to engage in any inquiry concerning the public-duty doctrine* or whether a 'special duty' or 'special relationship' existed between the Sheriff and the decedent.") (emphasis added); *Anderson v. Snyder*, 389 F. Supp. 3d 1082, 1090 (S.D. Fla. 2019) (not addressing sovereign immunity upon finding the Sheriff did not owe a duty while responding to a 911 call).

      Cases like *Pollock* and *Wallace* underscore that the scope of the duty owed by federal and state government actors is the *same* under Florida law—not narrower or broader.  Instead, the state and federal governments have the same duties as private persons in like circumstances.  Thus, the United States does not cite *Pollock* and *Wallace* to analogize the FBI's conduct with state actors in order to derive any privileges or immunities afforded to state governmental entities.  *See generally Liranzo v. United States*, 690 F.3d 78, 92-93 (2d Cir. 2012) (distinguishing between analysis of duty under the private person analog and applicability of law-enforcement privileges).  Rather, those cases are the most analogous to these consolidated actions, and the Florida Supreme Court has already concluded that a private person—and, by extension, a government entity—would not owe a duty of care in these circumstances.  Not surprisingly, Plaintiffs suggest that the Court keep looking further afield until it finds an analogy that gives rise to a duty.  To do so would be a misapplication of the law.

### III. The FBI did not owe Plaintiffs' decedents or those injured a duty under Florida law.
#### A. Plaintiffs have not satisfied the elements under Florida's undertaker's doctrine.

While Florida has adopted the Restatement (Second) of Torts' articulation of the voluntary undertaking doctrine, see *Wallace*, 3 So. 3d at 1046, the Complaint fails to satisfy any of the prongs necessary to state a claim under Florida law.

#### 1. PAL did not engage in an undertaking under Florida law.

In their third section, Plaintiffs suggest that the United States "does not appear to dispute" that the FBI's conduct amounted to an "undertaking." ECF No. 219 at 10. Plaintiffs assert both a generalized and contextual basis to find an undertaking. From a general standpoint, Plaintiffs assert that PAL undertook "to serve as the central repository and conduit of information concerning threats of mass shootings and school shootings." *Id.* at 12. Alternatively, Plaintiffs allege that the assurances provided to the January 5 caller by the PAL customer service representative constituted an undertaking. Both arguments fail as a matter of law.

To be clear, the United States vigorously argued in its motion to dismiss that the FBI did not engage in an undertaking under Florida law. The United States first argued that "[t]he establishment of PAL, and other general law enforcement efforts by the FBI, cannot form the basis of a voluntary undertaking under Florida law." ECF No. 206 at 11. Plaintiffs note that, under the Restatement (Second) of Torts § 324A, "there is no requirement that the third person be 'specific individuals' or be known to the undertaker." ECF No. 219 at 11. While the United States does not contest that general proposition of law, Florida case law makes clear that "[t]he responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person." *Pollock*, 882 So. 2d at 932; *see also Anderson*, 389 F. Supp. 3d at 1093-94 (citing *Pollock* and its progeny to find no duty absent a special duty of care).

The FBI's establishment of PAL for the benefit of the general public six years before Cruz's heinous act is not a sufficiently affirmative or specific undertaking to create a duty owed to Plaintiffs' decedents or those injured in the school shooting. PAL operates in furtherance of the FBI's mission of enforcing federal law for the benefit of the general public. The alleged undertaking of receiving tips and determining whether they merit further attention cannot be separated from the FBI's broader law enforcement effort. As the Complaint alleges, PAL

"analyze[s] every tip" and "give[s] it its due diligence."  Compl. at 10.  Plaintiffs acknowledge that PAL is not merely a switchboard created to ministerially forward tips to field offices.  Insofar as PAL determines what should be done with each tip, it cannot be parsed from the central law-enforcement function of the FBI.  Florida has never found a common law or statutory duty arising from such an endeavor.

Rather astonishingly, Plaintiffs concede that they "have alleged neither a foreseeable zone of risk to the general public, nor a duty owed to the general public."  ECF No. 219 at 21.  But the creation of PAL cannot be anything other than for the benefit of the general public.  That is why Plaintiffs rely so heavily on their alternative argument: that the alleged assurance provided by the PAL customer service representative gave rise to a duty.  The cases Plaintiffs cite acknowledge that, absent such an alleged assurance by the PAL customer service representative to the tipster in question, no duty existed.  *See, e.g.*, *DeLong v. Erie Cty.*, 457 N.E. 2d 717, 721 (N.Y. Ct. App. 1983) (basing duty not merely on the creation of the emergency call center but "most significantly, the victim's plea for assistance was not refused.  Indeed she was affirmatively assured that help would be there 'right away'"); *St. George v. City of Deerfield Beach*, 568 So. 2d 931 (Fl. 4th DCA 1990) (finding "the appearance that a special relationship came into being" based on the interactions between the paramedics, 911 emergency services, and the ex-wife).

Here, as exhaustively documented in the Government's motion, the transcript of the January 5 call confirms that the PAL customer service representative made no assurances to the tipster.  Consequently, no undertaking occurred and no duty arose.

### 2.  The Complaint fails to allege that PAL induced reasonable reliance.

Contrary to Plaintiffs' suggestion, it is well settled that reliance is judged by an objective, reasonableness standard.  *See, e.g.*, *Navigators Ins. Co. v. Markel Am. Ins. Co.*, 477 F. App'x 596, 598 (11th Cir. 2012) (dismissing claim because plaintiff "failed to demonstrate *reasonable* reliance upon any undertaking to procure insurance") (emphasis added); *Isasi v. Golden Rule Ins. Co.*, No. 18-80341-CIV, 2018 WL 8260878, at *3 (S.D. Fla. July 24, 2018) (Dimitrouleas, J.) (concluding that plaintiff adequately alleged "*reasonable* reliance [on defendant's undertaking to procure health insurance policy] sufficient to trigger a duty") (emphasis added); *Stacy v. Aetna Cas. & Sur. Co.*, 484 F.2d 289 (5th Cir. 1973) (concluding that defendant's liability must be

5

based, in part, on a finding "that [plaintiff's] injury resulted from *reasonable* reliance" on the undertaking) (emphasis added).[2]

It is undisputed that the FBI did not engage in any affirmative and specific conduct to protect Plaintiffs' decedents or those injured in the attack from Nikolas Cruz. And the transcript of the January 5 call, which forms the basis of Plaintiffs' case, confirms that the PAL intake specialist did not make any assurances to the caller. Absent such assurances, PAL could not have induced the caller's reasonable reliance. The caller's subjective belief that she did not need to take other protective measures or contact other authorities is immaterial. In addition, Plaintiffs' representation that they contacted the January 5 caller, and the tipster herself told Plaintiffs' counsel that she "relied on the PAL's undertaking and rested easy," does not change the calculation.[3] For purposes of applying Florida's undertaker's doctrine, the relevant inquiry is whether the defendant engaged in conduct that would induce reasonable reliance. Here, it plainly did not.

### 3. PAL did not increase the risk of harm.

Plaintiffs raise two factual bases upon which they contend the FBI increased the risk of harm to the victims by creating and operating PAL. Plaintiffs first claim that "the January 5 caller relied on the PAL's undertaking and therefore forewent additional steps that would have mitigated or prevented the harm to Plaintiffs' decedents." ECF No. 219 at 14. This argument simply repackages Plaintiffs' reliance argument and, therefore, requires no additional reply.

---

[2] The concept that a defendant's liability cannot be predicated on a plaintiff's or third party's *unreasonable* reliance is consistent with other areas of law. *See, e.g.*, Restatement (Second) of Contracts § 90 (1981) ("Promise Reasonably Inducing Action or Forbearance"); Restatement (Second) of Agency § 378 (1958) ("Gratuitous Undertakings").

[3] Plaintiffs' attempt to create a factual issue regarding reliance is a red herring. When adjudicating Rule 12(b)(1) and (b)(6) motions to dismiss, courts consider the face of the complaint and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The United States does not dispute, for purposes of this motion, that the January 5 caller made no further outreach to any law enforcement agency between January 5 and February 14, 2018. *See* ECF No. 219 at 13. Nonetheless, PAL's statements during the January 5 call, which was transcribed, made publicly available, and incorporated by reference into the Complaint, foreclose Plaintiffs' reliance argument as a matter of law.

Second, Plaintiffs argue that, "had the FBI not undertaken to create the PAL to function as the central repository for receiving and conveying threats about the public, callers would still have been able to directly contact their local field office concerning threats to human life." ECF No. 219 at 14-15. This argument conflates two critically distinct concepts: failing to mitigate a risk of harm and increasing a risk of harm. Even assuming *arguendo* that the creation of PAL was a sufficient undertaking for purposes of § 324A (which, as outlined above, it is not), Plaintiffs' argument, at best, is that the establishment of PAL reduced the chances the FBI could mitigate an existing risk. In other words, whether the creation of PAL reduced the chances that the FBI could have mitigated the risk posed by Cruz is not at issue. Rather, because Plaintiffs cannot allege that the PAL *increased* the risk Cruz posed to Plaintiffs' decedents, their claim fails as a matter of law.[4]

### B. *Wallace v. Dean* does not support a duty in this case.

Plaintiffs' cursory comparison of this case to *Wallace v. Dean* is woefully inadequate. In *Wallace*, the Sheriff's deputies "affirmatively and specifically undertook to provide aid to [the plaintiff's decedent] Brenda." 3 So. 3d at 1052. The deputies "responded to the [neighbor's] call and arrived to aid Brenda." *Id.* at 1043. Upon arrival, they received "background information [from the neighbor] concerning Brenda's situation;" they entered Brenda's home and also allowed the neighbor and the neighbor's father to enter; and they actually engaged Brenda, attempting to rouse her by "*repeatedly scream[ing] her name and physically sh[aking] her body*." *Id.* (emphasis in original). When Brenda remained unresponsive despite the

---

[4] Plaintiffs make much of the fact that a duty may be found pursuant to the increased risk variant of the undertaker's doctrine even where a "hazardous condition existed *prior to or independent of* the undertaking." ECF No. 219 at 14. While the United States does not dispute that proposition as a general matter of law, when an undertaking involves a pre-existing hazardous condition, courts consistently require that the defendant's failure to protect the undertaking affirmatively increase the risk of harm from such pre-existing hazardous condition. *See, e.g.*, *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64 (Fla. 1996) (funeral director who voluntarily organized and lead a funeral procession owed a duty to participants in procession because director's failure to exercise reasonable care increased the risk that a participant would be injured while driving through a red streetlight that, absent the procession, participants were otherwise required to stop at); *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003) (company's failure to exercise reasonable care in undertaking the maintenance of operative streetlights increased the risk that a driver would not see a pedestrian at nighttime because such failure caused an otherwise lighted street to be cast in darkness).

deputies' extensive efforts, the neighbor requested the deputies summon an ambulance. However, the deputies "*rebuffed*" the neighbor's request to summon an ambulance by "*repeatedly assuring*" her that it was "*unnecessary to do so because Brenda was merely sleeping.*" *Wallace*, 3 So. 3d at 1043 (emphasis in original). In fact, one of the deputies even dispelled the suggestion that Brenda might have lapsed into a diabetic coma, responding that "*one does not snore if in a diabetic coma.*" *Id.* (emphasis in original). A comparable undertaking is clearly absent here.

### IV.    No duty existed under the "foreseeable zone of risk" doctrine.

Plaintiffs next argue that the FBI "created a risk" when it established PAL "by *eliminating* the ability of concerned citizens to contact their local FBI field offices directly and *rerouting* these calls to PAL employees in West Virginia." ECF No. 219 at 18. Relying on *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992), and *United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008), Plaintiffs contend that the creation of PAL was tantamount to placing Nikolas Cruz's victims in a foreseeable "zone of risk." Plaintiffs misinterpret Florida's "zone of risk" doctrine.[5]

Under Florida's "zone of risk" doctrine, the defendant must have *created* the risk and been in a position to control it. In *McCain*, the court observed that, by burying and mismarking the location of an inherently dangerous electrical cable, the power company had created a foreseeable risk that someone would be injured by coming into contact with it and, therefore, had a legal duty to protect against such an outcome. 593 So. 2d at 504. In *Stevens*, the plaintiffs alleged that the government had "generated, tested and handled deadly laboratory organisms, but

---

[5] Plaintiffs make the remarkable claim that the *McCain* court "made foreseeability the *sole* determinant of whether a duty exists." ECF No. 219 at 16 (emphasis added). That pronouncement is clearly incorrect as a matter of law. *Aguila v. Hilton, Inc*., 878 So. 2d 392, 397 (Fla. 1st DCA 2004) (citing *Thompson v. Baniqued*, 741 So.2d 629 (Fla. 1st DCA 1999) (noting a legal duty does not arise "merely because the harm in question was foreseeable"). Indeed, such a dispositive inquiry would negate all other duty doctrines and result in different outcomes in innumerable cases. *See, e.g.*, *Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014); *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999). While the *McCain* court acknowledged that foreseeability was "a *minimal* threshold legal requirement for opening the courthouse doors," 593 So. 2d at 502, it further instructed courts must examine the factual allegations "to determine whether a foreseeable, general zone of risk was *created* by the defendant's conduct." *Id*. at 502 n.1. Thus, the creation of the risk and the foreseeability of the harm must be properly alleged.

8

failed to employ adequate security procedures during the commission of these acts," thus "exposing the public to an unreasonable risk of contamination as a result of unauthorized interception and disbursement of lethal materials." 994 So.2d at 1062. The court found that these allegations sufficiently established the "commission of affirmative acts (ownership and handling of biohazards), which, under [Restatement of Torts] Section 302b, give rise to a corresponding duty to protect all others exposed to any 'unreasonable risk of harm' arising out of that activity." *Id.*; *see also Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

Here, PAL neither created the risk nor controlled it. And, to be clear, Nikolas Cruz was the risk. Plaintiffs have not alleged, nor can they allege, that the FBI created or broadened the risk Nikolas Cruz posed to Marjory Stoneman Douglas High School. Similar to their "increased risk of harm" argument, Plaintiffs falsely equate the reduction of the ability to mitigate a risk with the *creation* of a risk. Indeed, while Plaintiffs attempt to identify a duty by alleging affirmative conduct by the FBI (*i.e.*, its creation of PAL), it is clear that Plaintiffs' real claim is one of omission (*i.e.*, the FBI failed to act upon the tips it received about Nikolas Cruz). Regardless of whether the tipster would have sought assistance elsewhere or contacted the FBI's Miami Field Office directly, the zone of risk posed by Nikolas Cruz remained the same. The FBI did not *create* that zone of risk and did not broaden it. Plaintiffs' reliance upon *McCain* and other cases involving defendants whose own affirmative conduct created an unreasonable risk of harm is therefore misplaced.

### V. FBI directives do not establish a duty of care.

Plaintiffs contend that "internal protocols that have been adopted as 'standards of conduct' give rise to an independent duty of care upon which a claim of negligence can be predicated." ECF No. 219 at 19. Plaintiffs cite *Pollock* for this proposition despite its clear instruction: "While a written policy or manual may be instructive in determining whether the alleged tortfeasor acted negligently in fulfilling an independently established duty of care, it does not itself establish such a legal duty vis-à-vis individual members of the public." 882 So. 2d at 936. To the extent the *Pollock* court indicated that *the sovereign* government entity in Florida may adopt protocols and procedures as standards of conduct, which then form the basis of a duty, it is irrelevant here because the United States is only liable as a private party would be. *See City of Jacksonville v. DeRay*, 418 So. 2d 1035 (Fla. 1st DCA 1982) (assessing whether a municipality complied with a manual that was adopted by the sovereign as the standard of care).

9

The remaining two cases cited by Plaintiffs—neither of which was issued by Florida courts—do not support their argument that FBI directives establish a duty of care. First, Plaintiffs rely on dictum in a footnote in *Moody v. United States*, 774 F.2d 150, 156 n.8 (6th Cir. 1985), which implied that a federal regulation may be relevant to define the scope of an undertaking if the relevant state's law established a duty. The Sixth Circuit, however, was clear that the relevant analysis is whether a cause of action exists under state law, and federal regulations may be relevant if they are analogous to the applicable state's tort law duty. *Id*. As the United States has already demonstrated that no duty existed under Florida law, *Moody* is unavailing. Similarly, Plaintiffs' reliance on *Florence v. Goldberg*, 375 N.E.2d 763, 767 (N.Y. 1978), is misplaced, as the case centered on whether the city had assumed a particular duty to a special class of persons (i.e., children in the crosswalk). Accordingly, the FBI's adoption of directives cannot establish an actionable duty under Florida law.

## VI. The United States' arguments are responsive and well supported.

Finally, Plaintiffs assert that the United States' arguments are "inapposite." ECF No. 219 at 19-20. In reality, the United States methodically addressed each hypothetical legal duty that Plaintiffs might have attempted to advance based on the facts alleged in the Complaint. That Plaintiffs now disavow various legal theories streamlines that analysis. Because the case involved the criminal acts of a third party, the United States cited the black-letter, no duty doctrine and addressed the single recognized exception under Restatement (Second) of Torts § 315. Plaintiffs now stipulate that they "do not allege that the FBI had a special relationship with the victims of the shooting." *Id*. at 20. Similarly, Plaintiffs stipulate that they are alleging "neither a foreseeable zone of risk to the general public, nor a duty owed to the general public." *Id*. at 21. While Plaintiffs make that concession to distinguish *Abad v. G4S Secure Solutions, Inc.*, Nos. 4D18-2658 and 4D19-1064, 2020 WL 1546443 (Fla. 4th DCA 2020), it effectively forecloses their arguments that the mere creation of PAL established a duty.

Finally, *LA Fitness International, LLC v. Mayer*, 980 So. 2d 550 (Fla. 4th DCA 2008), stands for the unremarkable proposition that individuals cannot be held liable for failing to perform an activity they have not undertaken to perform. Because the FBI did not render services or aid to the Plaintiffs' decedents or those injured; did not control or assume responsibility for Nikolas Cruz; and did not create or broaden the risk posed by Cruz, the Government did not engage in any undertaking for which it can be held liable.

## **CONCLUSION**

For the reasons stated, the United States respectfully requests that the Court grant its Motion to Dismiss.

Dated this 20th day of May 2020.

Respectfully submitted,
**JOSEPH H. HUNT**
Assistant Attorney General
Civil Division
**ARIANA FAJARDO ORSHAN**
United States Attorney
**AUGUST FLENTJE**
Special Counsel
Civil Division
**JAMES G. TOUHEY, JR.**
Director, Torts Branch
Civil Division
**STEPHEN E. HANDLER**
Senior Trial Counsel, Torts Branch
**CARLOS RAURELL**
Assistant United States Attorney
Florida Bar No. 529893

*/s/ Paul David Stern*
**PAUL DAVID STERN**
**SABRINA UNDERWOOD**
**SARAH HASTON**
Trial Attorneys, Torts Branch
Civil Division
**Attorneys for Defendant**
**UNITED STATES OF AMERICA**