### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

Case No. 18-62758-CIV-DIMITROULEAS
(Consolidated cases)

IN RE: MARJORY STONEMAN DOUGLAS
HIGH SCHOOL SHOOTING FTCA LITIGATION
_____/

### DEFENDANT UNITED STATES OF AMERICA'S
### MOTION FOR SUMMARY JUDGMENT

**BRIAN M. BOYNTON**
Acting Assistant Attorney General
Civil Division

**JUAN ANTONIO GONZALEZ**
United States Attorney

**CARLOS RAURELL**
Assistant United States Attorney
Florida Bar No. 529893

**PAUL DAVID STERN**
**SARAH KLEIN**
**ASHLEY R. GARMAN**
Trial Attorneys, Torts Branch
Civil Division

**Attorneys for Defendant**
**UNITED STATES OF AMERICA**

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

   I.    **Plaintiffs Cannot Prove that the PALU's Decision Not to Forward the Tip**

       **Proximately Caused Their Injuries.** .............................................................. **3**

   II.   **The Disclosure of Expert Reports or Outstanding Discovery Cannot Create a**

       **Triable Proximate Causation Issue.** ............................................................. **12**

REQUEST FOR HEARING................................................................................................ 16

CONCLUSION................................................................................................................... 17

i

**<u>TABLE OF AUTHORITIES</u>**

<u>Federal Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ......................................................... 3

*Castaldo v. Stone*,
   192 F. Supp. 2d 1124 (D. Colo. 2001) ........................................................................... 10, 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................................................... 3

*Ellis v. England*,
   432 F.3d 1321 (11th Cir. 2005) .......................................................................................... 3

*Estate of Brennan v. Church of Scientology Flag Svc. Org., Inc.*,
   832 F. Supp. 2d 1370 (M.D. Fla. 2011) ................................................................... 4, 5, 7

*In re Royal Caribbean Cruises Ltd.*,
   991 F. Supp. 2d 1171 (S.D. Fla. 2013) ................................................................... 4, 5, 6

*Nowlan v. Cinemark Holdings, Inc.*,
   2016 WL 4092468 (D. Colo. Jun. 24 2016) .......................................................................... 11

*Phillips v. Lucky Gunner, LLC*,
   84 F. Supp. 3d 1216 (D. Colo. 2015) ................................................................................... 11

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,
   117 F.3d 1278 (11th Cir. 1997) ........................................................................................... 2

*Tonelli v. NCL (Bahamas) Ltd.*,
   428 F. Supp. 3d 1313 (S.D. Fla. 2019) ..................................................................... 5, 12, 13

*United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*,
   894 F.2d 1555 (11th Cir. 1990) ........................................................................................... 2

<u>State Cases</u>

*Burris v. Eddie's Liquor Store, No. B153671*,
   2002 WL 31521538 (Cal. Dist. Ct. App. Nov. 14, 2002) ....................................................... 9

*City of Ocala v. Graham*,
   864 So. 2d 473 (Fla. Dist. Ct. App. 2004) .................................................................. 4, 7, 8

*Gooding v. Univ. Hosp. Bldg., Inc.*,
   445 So. 2d 1015 (Fla. 1984) .......................................................................................... 4, 6

*Hurst v. Astudillo*,
   631 So. 2d 380 (Fla. Dist. Ct. App. 1994) ..................................................................... 5, 6

ii

*Lopez v. McDonald's Corp.*,
  193 Cal. App. 3d 495 (Cal. Dist. Ct. App. 1987) .................................................. 11

*McCormick Shipping Corp. v. Warner*,
  129 So.2d 448 (Fla. Dist. Ct. App. 1961) ........................................................ 6

*Nielsen v. City of Sarasota*,
  117 So. 2d 731 (Fla. 1960) .......................................................................... 4, 13

*Roberts v. Healey*,
  991 S.W.2d 873 (Tex. Dist. Ct. App. 1999) .................................................. 11

*Ruiz v. Tenet Hialeah Healthsystem, Inc.*,
  260 So. 3d 977 (Fla. 2018) ........................................................................... 4

*Saelzler v. Advanced Group 400*,
  25 Cal. 4th 763 (Cal. 2001) ......................................................................... 13

*Sch. Bd. of Broward Cnty. v. Beharrie*,
  695 So. 2d 437 (Fla. Dist. Ct. App. 1997) .................................................... 5-6

### **Statutes**

Fla. Stat. § 394.463 ....................................................................................... 7

Fla. Stat. § 943.10 .......................................................................................... 7

### **Rules**

Fed. R. Civ. P. 56 ........................................................................................... 2

Local Rule 7.1 ................................................................................................ 16

Local Rule 30 ................................................................................................ 14, 15

Local Rule 56.1 ............................................................................................. 9

**INTRODUCTION**

These consolidated cases stem from the horrific school shooting that occurred at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018. The shooter, Nikolas Cruz, entered the high school, murdered 17 students and teachers, and injured at least 17 others. Plaintiffs brought one count of negligence against the United States under the Federal Tort Claims Act ("FTCA"), alleging that the FBI failed to properly handle information it received concerning Nikolas Cruz prior to the shooting. Plaintiffs posit that, had the FBI properly acted upon the information, they would not have suffered their injuries (*i.e.*, the shooting would not have occurred).

While Plaintiffs understandably seek compensation for the unspeakable losses they have suffered, the United States is entitled to summary judgment as a matter of law because the FBI was not a proximate cause of the shooting. Plaintiffs' causation theory is based on pure speculation that special agents in the Miami Field Office would have been able to prevent Cruz from committing his heinous act. Not only is such a theory speculative, but it necessarily relies on an impermissible stacking of inferences regarding how an investigation would have led to the prevention of the crime. Such conjecture cannot withstand summary judgment under Florida law.

No expert reports or outstanding discovery can change that conclusion. Plaintiffs failed to create a factual record for their proximate causation theory. They did not request the deposition of a single FBI special agent from the Miami Field Office.[1] Plaintiffs did not

---

[1] The United States identified the Special Agent in Charge of the Miami Field Office in its initial disclosures given to Plaintiffs in December 2020. He was identified as someone having "[i]nformation pertaining to the activities that would be conducted by the FBI Miami Field Office upon receiving actionable information from PAL." The United States amended its disclosures with two additional special agents from the Miami Field Office in August 2021.

propound any Interrogatories or Requests for Admission on the specific steps that would have been taken at the Miami Field Office in response to the information about Cruz, let alone whether such steps would have prevented this mass shooting.  Rather, 31 days before the close of discovery, Plaintiffs requested an Inspection Division report about the Miami Field Office and "[a]ny and all FD-515s submitted in the past ten years in the FBI Miami Field Office, including any and all documents summarizing the number and type of accomplishments submitted."  Such information about the Miami Field Office and its other investigations is insufficient to prove causation in this case.  Nor can Plaintiffs rely on expert reports to create a triable issue on causation.  Consequently, the United Sates should be granted summary judgment.[2]

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In making this assessment, the Court "view[s] all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve[s] all reasonable doubts about the facts in favor of the non movant."  *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am*., 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[2] Although the United States is moving for summary judgment only on the issue of causation, we have several other defenses which we have preserved and intend to raise at or before trial, including under the discretionary function exception of the Federal Tort Claims Act.

judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record . . .  mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.  In such cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323, 106 S. Ct. 2548.

## **ARGUMENT**

### I.      **Plaintiffs Cannot Prove that the PALU's Decision Not to Forward the Tip Proximately Caused Their Injuries.**

Assuming, without conceding, that Plaintiffs could demonstrate that the FBI Public Access Line Unit ("PALU") breached a standard of care by not forwarding information about Nikolas Cruz to the Miami Field Office, Plaintiffs' claims still fail as a matter of law because they cannot establish that this decision proximately caused their injuries.  That is because Plaintiffs' causation theory is built upon a tenuous piling of inferences, which is too speculative to withstand summary judgment under well-settled law.

3

In Florida, to establish the proximate cause element of a negligence claim, a plaintiff must prove that the defendant's negligence more likely than not was a "substantial cause" of the plaintiff's particular injury. *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 982 (Fla. 2018); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (citation omitted). It is not enough for the plaintiff alleging negligence to raise a "mere possibility" of such causation. Rather, the plaintiff must adduce evidence affording a reasonable basis for finding substantial causation, and when the causation theory rests upon "pure speculation or conjecture, or the probabilities are at best evenly balanced," the defendant is entitled to judgment in its favor. *Gooding*, 445 So. 2d at 1018 (hospital entitled to directed verdict where evidence established, at best, an even chance that plaintiff's decedent would have survived but for alleged medical negligence) (quoting Prosser, Law of Torts § 41 (4th ed.1971)); *see also In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1183-84 (S.D. Fla. 2013); *Estate of Brennan v. Church of Scientology Flag Svc. Org., Inc.*, 832 F. Supp. 2d 1370, 1374, 1377 (M.D. Fla. 2011); *City of Ocala v. Graham*, 864 So. 2d 473 (Fla. Dist. Ct. App. 2004).

As a general matter, civil litigants may establish ultimate facts like proximate causation through reasonable inferences drawn from circumstantial evidence. *Nielsen v. City of Sarasota*, 117 So. 2d 731, 733-34 (1960). However, Florida courts place an important limitation upon this general rule: if a party "depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, [the party] cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established t*o the exclusion of all other reasonable inferences." Id.* (emphasis added). Put another way, the inferred fact may only be "pyramided" or stacked upon one another *if* the

4

preceding inference is the *only reasonable inference* to be drawn from the evidence. *Hurst v. Astudillo*, 631 So. 2d 380, 381 (Fla. Dist. Ct. App. 1994) (per curiam) (citation omitted).

In accordance with this principle, federal and state courts in Florida grant judgment in favor of defendants when the plaintiffs' theory of proximate causation is built upon impermissibly stacked inferences that render the theory too speculative to present a genuine issue of material fact. *See, e.g.*, *Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313, 1320-22 (S.D. Fla. 2019) (cruise ship operator entitled to summary judgment where plaintiffs alleged that operator's negligence caused daughter's salmonella infection; plaintiffs had no direct evidence that operator's kiddie pool was the source of the child's infection and failed to adduce evidence excluding all other reasonable sources, making the chain of causation based on circumstantial evidence "too speculative to present a genuine issue of material fact."); *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d at 1182-84 (summary judgment to cruise ship operator on injured passenger's negligence claim where proximate cause theory rested on multiple inferences, one of which was speculative and not the most plausible explanation for the jet ski collision that caused plaintiff's injuries); *Estate of Brennan*, 832 F. Supp. 2d at 1374, 1377 (proximate cause lacking as a matter of law because the plaintiff's "proliferation of compounded inferences and speculation provides no basis on which to create a genuine issue of material fact"); *Sch. Bd. of Broward Cnty. v. Beharrie*, 695 So. 2d 437, 438-39 (Fla. Dist. Ct. App. 1997) (per curiam) (defendant school board entitled to directed verdict on high school soccer player's personal injury claim; while there was no dispute that a player had fouled plaintiff during game after fouling player's coach had yelled at him, based on trial record conclusion that fouling player heard coach and acted on what he heard could only be made by "improper[ly] stacking ... an

inference upon an inference"); *Hurst*, 631 So. 2d at 381; *McCormick Shipping Corp. v. Warner*, 129 So.2d 448, 449-50 (Fla. Dist. Ct. App. 1961).

Notably, in a parallel state civil litigation stemming from the Parkland shooting, the trial court rejected a highly attenuated liability theory advanced by the plaintiffs (many of whom are also Plaintiffs in the FTCA litigation) against the Broward County School Board ("BCSB") that was similar to Plaintiffs' theory against the Government here. Addressing only the state plaintiffs' theory that BCSB's alleged failure to administer appropriate and effective programs to Cruz during his years of schooling proximately caused Cruz to commit the massacre, the trial court found that those allegations amounted to "an impermissible stacking of inferences" and granted BCSB's motion to dismiss that particular claim. *See* Order on Broward County School Board's Partial Motion to Dismiss and Motion to Strike, *In re: Marjory Stoneman Douglas High School*, Case No. CACE190800000 at 3-4 (Fla. Cir. Ct. Feb. 8, 2021). The court reasoned:

> There is no foundation for the argument that **if** Cruz had been sent to a different program, and **if** he had been treated as a higher threat years before the incident, and **if** he had been criminally charged years earlier so he'd have been convicted and could not buy or own a gun, and **if** he had never been permitted to attend Marjory Stoneman Douglas, then he would not have been on this campus and would never have committed the crime.

*Id.* at 4 (emphasis in original).

Similarly in this action, Plaintiffs can demonstrate no more than a "mere possibility" that PALU's decision not to forward the information about Cruz to the Miami Field Office was a substantial factor in bringing about Cruz's February 14, 2018, massacre. *Gooding*, 445 So. 2d at 1018; *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d at 1183-84. That is because Plaintiffs' theory necessarily rests on a "compounding of inferences and a concatenation of

speculation," which cannot raise a genuine issue of material fact. *Estate of Brennan,* 832 F. Supp. 2d at 1375-77.

Plaintiffs still have yet to articulate their proximate causation theory. The closest they have come to explaining what specific, concrete steps they contend that the Miami Field Office would have taken to prevent the shooting comes from their Consolidated Verified Amended Complaint:

> FBI agents in the FBI Miami Field Office would have had numerous options to investigate and prevent the attack that took the lives of [Plaintiffs], including, but not limited to, directly interviewing Cruz; surveillance of Cruz; searching Cruz's home where they would have found a cache of guns and ammunition, some of which had swastikas etched onto them; having Cruz committed to a mental health institution; arresting Cruz; search and seizure of Cruz's weapons; search and seizure of Cruz's cellphone, where the FBI would have discovered Cruz's escalation of his violent plans; coordination with local law enforcement; enlisting third-party monitors; and increased vigilance and target hardening activities, including warning Marjory Stoneman Douglas High School of a potential for an attack and taking security precautions to protect the students and teachers at the school. Any one of these measures would have prevented the deaths of [Plaintiffs].

ECF No. 190 at ¶ 185. Some of Plaintiffs' theories can be dismissed out of hand. For example, Plaintiffs cannot adduce evidence that the FBI has the legal authority to commit someone to a mental health institution. *See* Fla. Stat. §§ 394.463(2)(a)(2), 943.10(1) (involuntary examination under the *Baker* Act may be initiated by law enforcement officer, which is defined as "any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof . . . .").

With respect to interviewing Cruz, a Florida court has granted judgment as a matter of law to a defendant based on a similar fact pattern. In *City of Ocala v. Graham*, 864 So. 2d 473 (Fla. Dist. Ct. App. 2004), a shooting victim brought a negligence action against the city, alleging that because a police officer failed to talk to the victim's former husband about his

previous threat to her life, she was shot two days later.  There, the victim, Belinda Sweet Graham, was shot by her former husband, Nathaniel Sweet, after he telephoned Graham's sister and threatened to kill Graham, her new boyfriend, and her children.  Upon learning of the threat, Graham called the Ocala Police Department.  An Ocala police officer, Officer Smith, stated that he would speak with Sweet or would send someone to speak with him.  The officer wrote a report, at Graham's insistence, but explained to Graham that, because her sister was the victim of the menacing phone call, the sister would have to contact the sheriff's office where the phone call originated.  The report ended with "no further action taken."  Neither Graham nor her sister ever contacted the police department with jurisdiction.  Two days later, Sweet shot Graham following an altercation with her son.  A jury found the City fifteen percent negligent and Graham eighty-five percent negligent.

The appellate court reversed the judgment.  The appellate court framed the issue as follows: "Whether but for Officer Smith's failure to talk with Sweet, Graham would not have been harmed."  *Id*. at 478.  After acknowledging causation issues are typically left to the fact-finder, the court concluded that "[a] reasonable person could not answer that question affirmatively unless sheer speculation was enlisted when one reviews the facts of this case cast in a light most favorable to Graham."  The court reasoned that it was pure conjecture that Sweet would have been deterred or his disposition would have changed based on Officer Smith talking with him.  Such a conclusion was not reasonable in light of the "repeated disturbances and arrests that occurred subsequent to 'talks' that took place in the past during the couple's stormy marriage."  *Id*.

Here, it is sheer speculation that Cruz would have been deterred or that his disposition would have changed had the FBI Miami Field Office decided to interview him.  It is

8

uncontestable that Broward County Sheriff's Office had at least 43 contacts with or about the Cruz family prior to February 14, 2018. Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1 Stmt."), ¶ 16. Of those contacts, at least 18 involved Nikolas Cruz alone or both him and his brother, Zachary Cruz. *Id.* at ¶ 17. Many of the contacts stemmed from Cruz fighting with his brother, acting out physically or verbally towards his mother, or otherwise being disobedient at home. *Id.* Despite these repeated "talks" with law enforcement, Cruz was not deterred from continuing his violent actions and eventually committing mass murder. *Id.* at ¶¶ 22-23. It is pure speculation that Cruz would have been deterred had the FBI spoken with him. *Cf. Burris v. Eddie's Liquor Store*, No. B153671, 2002 WL 31521538 (Cal. Dist. Ct. App. Nov. 14, 2002) (shooting victim's claim that presence of a security guard in store parking lot would have deterred shooter from brazen attack in broad daylight was nothing more than speculation, and thus insufficient to raise a triable factual issue on causation).

Plaintiffs' remaining theories are likewise predicated on pure speculation and an impermissible stacking of inferences. There is no foundation for the argument that **_if_** PALU forwarded the information about Cruz to the Miami Field Office, and **_if_** the Miami Field Office decided to initiate an investigation, and **_if_** the special agent decided to employ a particular investigative activity, and **_if_** that activity provided the agent with a sufficient legal basis to seek authority to conduct additional activities (e.g., surveillance of Cruz, searching Cruz's home, seizing and searching Cruz's cellphone, seizing Cruz's weapons, arresting Cruz), and **_if_** that legal authority was granted by supervisors and, if necessary, the United States Attorney's Office and a magistrate judge, and **_if_** that activity was utilized, and **_if_** that investigative activity persisted from its initial stage through February 14, 2018, then Cruz never would have committed this crime.

9

Such a tenuous pyramid of inferences cannot create a triable fact that withstands summary judgment.[3]

A similarly speculative proximate causation argument was rejected by a Colorado federal court in connection with civil litigation arising out of another unthinkable school shooting.  In *Castaldo v. Stone*, 192 F. Supp. 2d 1124 (D. Colo. 2001), a victim of the mass shooting at Columbine High School perpetrated by two students sued, among other defendants, the school district and individual school district employees.  The plaintiff alleged that certain school officials, based upon statements made by the perpetrators and stories and videos submitted by the perpetrators as schoolwork, knew or should have known of the perpetrators' access to guns and intentions to commit an act of mass violence at the school, but failed to take measures to protect students against the perpetrators' future acts of violence.  The district court granted the school officials' motion to dismiss the negligence claims, finding that, even assuming the plaintiff could establish the duty and breach elements of his claim, his proximate cause theory was too attenuated to impose liability as a matter of law.  *Castaldo*, 192 F. Supp. 2d at 1170.[4]  ("To conclude that the

---

[3] To the extent Plaintiffs' theory rests upon the January 5, 2018, tipster's purported reliance on the PALU, *i.e.*, that the FBI caused the shooting by inducing the tipster to forgo additional preventative steps, Plaintiffs have not adduced evidence on what additional steps would have been taken, much less whether those additional steps would have prevented the shooting. Indeed, it is undisputed that the tipster contacted the Broward County Sheriff's Office, about a month before contacting the FBI, to report her concerns that Nikolas Cruz was a "Columbine in the making."  Def. 56.1 Stmt., ¶¶ 18-21.  This did not prevent the shooting.  Plaintiffs cannot prove that it is more likely than not that any forwent opportunity by the tipster would have resulted in a different outcome.

[4] As in Florida, Colorado law also requires negligence plaintiffs to demonstrate that the alleged tortious conduct was a "substantial factor" in producing the injury.  *Castaldo*, 192 F. Supp. 2d at 1170.  In dismissing the plaintiff's claims against the school officials, the district court in *Castaldo* also found that the school officials' alleged negligence was not a substantial factor in causing the plaintiff's injuries, given that the perpetrators' actions in committing the massacre "were the predominant, if not sole, cause."  *Id.* at 1171.

Columbine educators' conduct produced Plaintiffs' injuries, requires connecting a series of 'if …
then … ' propositions which are speculative at best.").

   In particular, the district court in *Castaldo* found that the plaintiff's theory that the school
defendants could have prevented the attack by initiating disciplinary proceedings against the
would-be perpetrators "begins with the uncertain assumption that students may be suspended or
expelled for submitting work with dark themes or violent images, and concludes with the
assumption that suspending or expelling students from school effectively eliminates their ability
to return with firearms." *Id.* Here, too, adopting Plaintiffs' theory of proximate causation against
the Government would require this Court to engage in conjecture about how a multitude of
variables would have played out had PALU forwarded the tips about Cruz to the Miami Field
Office—including, for example, accepting the "uncertain assumptions" that, had the information
subsequently been provided to Marjory Stoneman Douglas High School, the school would have
taken certain safety precautions, and those additional measures would have been successful in
preventing Cruz from committing his heinous act. *See also Phillips v. Lucky Gunner, LLC,* 84 F.
Supp. 3d 1216 (D. Colo. 2015) (dismissing negligence case stemming from Aurora theater mass
shooting because "a reasonable jury could not plausibly find that [the theater's] actions or inactions
were a substantial factor in causing this tragedy"); *Nowlan v. Cinemark Holdings, Inc.*, 2016 WL
4092468, at *3 (D. Colo. Jun. 24 2016); *Lopez v. McDonald's Corp*., 193 Cal. App. 3d 495 (1987)
(finding lack of causation due to heinousness of mass killing); *cf. Roberts v. Healey,* 991 S.W.2d
873, 879 (Tex. Dist. Ct. App. 1999) (attorney's failure to seek protective order for client against
estranged husband too remotely connected to husband's shooting of client's children and mother
to constitute legal cause, because attorney's inaction did no more than furnish the condition that
enabled the husband's attack).

II.     **The Disclosure of Expert Reports or Outstanding Discovery Cannot Create a Triable Proximate Causation Issue.**

Plaintiffs will no doubt argue that the Government's motion cannot be granted, given that certain discovery remains outstanding and expert discovery is not yet complete. However, no remaining discovery or expert opinions could provide sufficient support for their speculative theory of proximate causation.

*Tonelli v. NCL (Bahamas) Ltd.*, 428 F. Supp. 3d 1313 (S.D. Fla. 2019) is instructive on this point. There, the district court granted the defendant cruise ship operator summary judgment based on the plaintiffs' failure to demonstrate that the defendant's negligence proximately caused their daughter's salmonella infection. The plaintiffs had no direct evidence supporting their theory that their daughter caught salmonella from the cruise ship's "kiddie pool," and therefore attempted to build their causation argument circumstantially. They argued that, because the evidence established that the daughter had been in the kiddie pool playing with another toddler, that the other toddler was wearing a diaper or not potty-trained, that a brown substance was in the kiddie pool near the toddlers, and that the daughter put a pool toy in her mouth, one can infer that the brown substance was salmonella-laced fecal matter, which caused the daughter's infection. *Tonelli*, 428 F. Supp. 3d at 1320.

The district court rejected the plaintiffs' causation theory as too speculative to raise a genuine issue of material fact—notwithstanding that the plaintiffs proffered, among other experts, an epidemiologist who testified that the daughter more likely than not contracted salmonella from the kiddie pool incident. *Id.* at 1316-17, 1322. While the court did not exclude the epidemiologist's testimony, it found that the expert testimony was insufficient to exclude other reasonable possible sources of the infection, particularly because there was no way for anyone to test for salmonella in the pool and no concrete way to eliminate other sources of

12

infection, such as the daughter's other activities and food and water consumption during the cruise. *Id.* (noting that "to be conclusive, any medical opinions must be based on hard facts or established scientific methodology that eliminates other reasonable inferences.").

Thus, as *Tonelli* illustrates, expert testimony cannot salvage Plaintiffs' speculative causation theory unless such testimony can establish, based on facts or established methodologies, that the initial inferences from which Plaintiffs' causation theory flow are the *only reasonable inferences* to be drawn from the evidence. *Id.* at 1322; *Nielsen*, 117 So. 2d at 733. But there is simply no test that can be run, nor hard scientific principles that can be applied, that can predict how any one of the multitude of variables inherent in Plaintiffs' causation theory might play out to the exclusion of all other possible outcomes. Accordingly, even if Plaintiffs proffer a qualified expert who opines that the FBI more likely than not would have prevented the shooting had PALU forwarded the tips to the Miami Field Office, such testimony cannot make up for the absence of facts establishing the inferences upon which that opinion would have to be based "to the exclusion of all other reasonable inferences." *Nielsen*, 117 So. 2d at 733; *see also, e.g., Saelzler v. Advanced Group 400*, 25 Cal. 4th 763, 775-76 (Cal. 2001) (assault victim failed to establish causation as a matter of law where expert's opinion that additional security measures on premises would have prevented the assault based on "mere speculation, conjecture and inferences drawn from other inferences") (internal quotation marks and citation omitted).

Nor can any of the remaining outstanding evidence create a triable factual issue. On August 27, 2021 – 31 days before the close of discovery – Plaintiffs propounded their Fifth Set of Requests for Production of Documents. In that request, Plaintiffs made two requests presumably on the issue of causation. Plaintiffs requested, "Documents demonstrating the results of the most recent FBI Miami Field Office Inspection Report." For background, the FBI Inspection Division

13

periodically conducts audits of all field offices on a staggered basis and assesses the state of the field office's leadership, capabilities, and allocation of resources during the period under review. The Inspection Division last visited the Miami Field Office in late January and early February 2017.  The Division's review covered the previous 18 months.[5]  A review of the Miami Field Office from 2015-16 has marginal relevance to this case and cannot create a triable issue of fact about what steps the field office would have taken in this particular case which would have been able to prevent the shooting.

Similarly, in their August 27, 2021, document requests, Plaintiffs have sought, "Any and all FD-515s submitted in the past ten years in the FBI Miami Field Office, including any and all documents summarizing the number and type of accomplishments submitted."  FD-515s (which were forms used by FBI special agents to report investigative accomplishments) have not been used by the FBI in such a manner since 2012, and such "accomplishments" are instead documented in a database.  With respect to the particular category of investigations to which Plaintiffs have directed their request—namely, counterterrorism investigations—this database content is classified.[6]  In any event, accomplishments in other investigations are insufficient to create a triable issue of fact as to whether such an accomplishment would have taken place in this case.

Finally, Plaintiffs may cite the February 16, 2018 "FBI Statement on the Shooting in Parkland, Florida" ("FBI Statement").  The Statement reads in part that, had the PALU forwarded the tip to the Miami Field Office, "appropriate steps would have been taken."  Def. 56.1 Stmt., ¶

---

[5] While the Parties worked together to identify select chapters of the report for production, the report is classified, which has required the FBI's Classification Unit to review the material before it can be produced or placed on a privilege log.

[6] Nonetheless, the United States agreed to work with Plaintiffs to provide them the information they are seeking and even offered to provide a Rule 30(b)(6) deponent who can provide the requisite information in a manner that does not require the production of classified material.

25. Plaintiffs may continue to insist that they need emails concerning the FBI Statement and congressional briefing material to unearth what those "appropriate steps" would have been.  But neither the FBI Statement nor any congressional testimony stated that the Miami Field Office would have prevented the shooting through such investigative steps.  Indeed, the FBI has been candid about the speculative nature of whether such investigative steps would have changed the outcome.

In his March 20, 2018, testimony before the House of Representatives, Committee on the Judiciary, Subcommittee on Crime, Terrorism, Homeland Security and Investigations, the then-FBI Deputy Director David Bowdich dispelled the notion that the Miami Field Office could have arrested Cruz based on his gun purchases or being involved with racist groups or having expressed white supremacist attitudes.  Def. 56.1 Stmt., ¶ 26.  At best, Mr. Bowdich acknowledged the exact type of unknowable that clearly demonstrates Plaintiffs' theories cannot withstand summary judgment:

> So, when you look at these you kind of do a reverse engineering of what occurred here. And when we look at what we should have done and could have done, ultimately what could have and certainly would have been nice to have happen is we would have ended up in front of Mr. Cruz, actually face to face interviewing him.  Could that have stopped this act?  I do not know.  Could we have disrupted the act?  Could we have delayed it?  I do not know.

*Id*.  Mr. Bowdich's testimony underscores the purely speculative nature of Plaintiffs' causation theory.  Whether anything the FBI could have done would have prevented this heinous act is at best unknowable and, as a result, Plaintiffs cannot prove that the United States was a proximate cause of their injuries.  The Government is therefore entitled to summary judgment.[7]

---

[7] The United States submits this motion in light of the current schedule and existing pre-trial dispositive motion deadline.  *See* ECF No. 246 (establishing deadline for Substantive Pretrial Motion on October 27, 2021).  Given that Plaintiffs' causation theory is too speculative as a

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), the United States respectfully requests oral argument of this motion.  Although this motion is narrowly-tailored to one discrete element of Plaintiffs' negligence claim, its resolution in the Government's favor would be fully dispositive of a consolidated litigation involving 40 separate cases, which has spanned more than three years and has resulted in a record of over 100,000 pages of document discovery.  Given the vastness of the record and the importance of the issues at hand to all Parties, the Government respectfully seeks the opportunity to address any questions the Court may have regarding the merits of this motion. Should the Court be inclined to grant this request, the United States believes that approximately 30 minutes would be sufficient.

---

matter of law and that no expert discovery could, in this context, establish the necessary inferences, the Court need not wait until the completion of discovery to grant this motion. However, if the Court concludes that expert or other outstanding discovery must be completed before it can consider this motion, the United States respectfully requests that the Court defer ruling on this motion until an appropriate later date.

16

## CONCLUSION

For the reasons stated and upon the authorities cited, the United States respectfully

requests that the Court grant its summary judgment motion.

Dated: October 27, 2021                         Respectfully submitted,


                                                **BRIAN M. BOYNTON**
                                                Acting Assistant Attorney General
                                                Civil Division

                                                **JUAN ANTONIO GONZALEZ**
                                                United States Attorney

                                                **CARLOS RAURELL**
                                                Assistant United States Attorney
                                                Florida Bar No. 529893

                                                */s/ Paul David Stern*
                                                PAUL DAVID STERN
                                                SARAH KLEIN
                                                ASHLEY R. GARMAN
                                                Trial Attorneys, Torts Branch
                                                Civil Division
                                                **Attorneys for Defendant**
                                                **United States of America**

## <u>CERTIFICATE OF SERVICE</u>

On this date, I filed the foregoing *United States' Motion for Summary Judgment* with the

Clerk of Court using the CM/ECF electronic system.

Executed on October 27, 2021

*/s/ Carlos Raurell*
Assistant United States Attorney
Attorney for Defendant
UNITED STATES OF AMERICA

18