**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CONSOLIDATED ACTION
Case No. 18-62758-CIV-DIMITROULEAS

IN RE: MARJORY STONEMAN DOUGLAS
HIGH SCHOOL SHOOTING FTCA LITIGATION
_____/

**MOTION AND MEMORANDUM OF LAW**
**FOR AN AWARD OF COMMON BENEFIT FEES**

After years of zealously working on behalf of all victims of the Marjory Stoneman Douglas High School Shooting before the Court, undersigned counsel[1] has recently succeeded in reaching a global settlement with the United States on their behalf. In keeping with applicable law, undersigned counsel hereby moves for an award of a common benefit fee of ten percent of the global settlement in this matter. This fee would be paid from the fees due to all Plaintiffs' counsel so as not to impair any Plaintiff's recovery and be allocated amongst firms that contributed toward the common prosecution of this matter. The facts asserted below are verified by undersigned counsel, and to the extent that additional information would be helpful to the Court, undersigned counsel is prepared to make any further evidentiary submissions in writing or at a hearing, at which undersigned counsel and other firms could proffer evidence of work performed toward the prosecution and global settlement of this matter.

## INTRODUCTION

This consolidated action originally began over three and a half years ago, when Fred and Jennifer Guttenberg—individually represented by undersigned counsel—submitted their administrative claim form and later filed the first lawsuit against the United States arising from the Parkland shooting. The original complaint—which was filed in November 2018 and spanned 127 paragraphs in 33 pages—comprehensively described the facts giving rise to the Parkland families' theory of liability against the United States. Over the months that followed, undersigned counsel diligently prosecuted this case on behalf of the Guttenbergs, long before any other Parkland-related lawsuit was filed against the United States.

When the other consolidated Parkland claimants filed suit, in most cases years later and after this Court had denied the Government's Motion to Dismiss, undersigned counsel provided the other claimants with the complaint filed on behalf of the Guttenbergs. And after the other Parkland families filed claims, undersigned counsel took almost exclusive responsibility for litigating the liability issues in this matter on behalf of all the families, a role that this Court later formalized by appointing undersigned counsel Lead Counsel in this matter. These efforts recently culminated in an historic and exceptionally favorable global settlement between the families and the Government, in effect a common fund or common benefit for all the families.

---

[1] As used in this Motion, "undersigned counsel" refers to the several attorneys at Podhurst Orseck, P.A. who primarily worked on this matter over the past several years: Kristina Infante, Steven Marks, Pablo Rojas, Stephen Rosenthal, and paralegals Lidia Aja and Jacqueline Pupo.

Undersigned counsel took sole responsibility for virtually all the substantive liability work in the case, including preparing for and taking depositions, developing and executing high-level case strategy, drafting two comprehensive complaints used by all Plaintiffs, arguing multiple hearings, drafting and filing scores of substantive briefs and motions, conferring extensively with counsel for the Government on countless case management and discovery issues, and preparing for a trial that until recently was scheduled to begin on January 31, 2022. Not only did these efforts inure to the benefit of all Plaintiffs in the form of the global settlement, but many of these efforts were also undertaken at undersigned counsel's sole risk and expense, before other firms filed suit. Indeed, the majority of other Plaintiffs did not file suit until the Government's Motion to Dismiss was denied in 2020, after almost two years and more than two hundred docket entries' worth of litigation. And in a litigation that has resulted in more than four hundred docket entries to date, nearly every filing made on behalf of the consolidated Plaintiffs was prepared by undersigned counsel, and none was submitted without the input and approval of undersigned counsel.

Under governing Eleventh Circuit law, these efforts warrant a common benefit fee. Undersigned counsel specifically moves for a 10 percent common benefit fee, to be assessed as a percentage of the global settlement and paid from the fees of other Plaintiffs' counsel, so as not to affect any individual Plaintiff's recovery.[2] Any other Plaintiffs' counsel that did work for the common benefit of all cases and contributed to the prosecution of these matters would share in that assessment in a manner commensurate with their contribution to the common benefit. For example, Robert Stein of Rennert Vogel Mandler & Rodriguez, P.A. contributed capable and valuable work for the benefit of all Plaintiffs.

## FACTUAL BACKGROUND

### I.  The genesis of this litigation

1.  Undersigned counsel began preparations to initiate a lawsuit against the United States in March of 2018. During that time, undersigned counsel researched potential claims and theories of liability against the United States and prepared documents required to initiate litigation against the United States on behalf of Fred and Jennifer Guttenberg. The Guttenbergs' daughter,

---

[2]  The FTCA caps attorney fees at 25 percent of any recovery. *See* 28 U.S.C. § 2678. Accordingly, and to ensure that the Parkland families' individual recoveries are not affected in any way, undersigned counsel respectfully proposes that the common benefit award be assessed as a percentage of the global settlement, but be paid from the fees to be received by counsel in this consolidated matter, rather than from their clients' recovery.

3

Jaime, died after being shot by Parkland Shooter Nikolas Cruz at Marjory Stoneman Douglas High School. She was 14 years old.

2. In order to initiate a lawsuit against the United States, a claimant must first submit a Standard Form 95, which is used to present claims under the Federal Tort Claims Act ("FTCA"). The form includes information regarding the basis of the claim and known witnesses, among other things. Undersigned counsel submitted a Standard Form 95 on behalf of the Guttenbergs on March 27, 2018, and the FBI confirmed receipt on April 2, 2018.

3. On November 13, 2018, after the statutory six-month waiting period expired, undesigned counsel filed the first Complaint in this matter—that is, the first FTCA case arising out of the Parkland shooting—on behalf of the Guttenbergs. Undersigned counsel devoted significant time and effort to this Complaint, which spanned 33 pages and 127 paragraphs. *See* D.E. 1.

4. On March 5, 2019, the Government filed a Motion to Dismiss for Lack of Jurisdiction. *See* D.E. 17.

5. In response, undersigned counsel sought to conduct jurisdictional discovery. This was a contested issue giving rise to significant motion practice. *See* D.E. 17 (USA's Motion to Dismiss); D.E. 18 (Plaintiffs' Motion for Jurisdictional Discovery); D.E. 21 (USA's Motion to Stay Discovery); D.E. 22 (USA's Response in Opposition to Plaintiffs' Motion for Jurisdictional Discovery); D.E. 24 (Plaintiffs' Reply Brief in Support of Motion for Jurisdictional Discovery); D.E. 25 (Plaintiffs' Response in Opposition to USA's Motion to Stay Discovery). This Court entered an omnibus order on April 15, 2019, granting in part the Motion for Jurisdictional Discovery. *See* D.E. 27 (granting limited jurisdictional discovery). The initial deadline for the completion of jurisdictional discovery was July 15, 2019.

## II. Jurisdictional discovery

6. Undersigned counsel prepared and served discovery on the United States and held numerous discovery conferences to attempt to resolve disagreements. On March 11, 2019, undersigned counsel served Plaintiffs' first sets of interrogatories and requests for production on the United States.

7. On the heels of the Court's grant of leave to conduct jurisdictional discovery, undersigned counsel engaged in numerous written and oral discovery conferences with the Department of Justice to resolve disagreements over the scope and timing of jurisdictional

4

discovery responses. When these lengthy conferences did not lead to resolution, undersigned counsel filed the first of many motions to compel discovery responses on June 21, 2019.

8. Throughout 2019, undersigned counsel and counsel for the Government had numerous disputes related to jurisdictional discovery, giving rise to extensive motion practice. Undersigned counsel drafted and filed discovery motions including motions identified at D.E. 32, D.E. 57, D.E. 62, D.E. 63, D.E. 66, D.E. 92, D.E. 98, D.E. 113, and D.E. 126, as well as several attendant reply memoranda identified at D.E. 45, D.E. 60, D.E. 73, D.E. 107, and D.E. 120.

9. Undersigned counsel also drafted responses to discovery motions filed by the Government, including responses identified at D.E. 76, D.E. 78, and D.E. 114.

10. Undersigned counsel also negotiated at length about and eventually entered into various stipulated discovery orders. *See* D.E. 50, D.E. 51, and D.E. 52.

11. Undersigned counsel also participated in motion practice involving sealed motions identified by D.E. 127, D.E. 128, D.E. 135, and D.E. 142.

12. Throughout this early period of the litigation, undersigned counsel provided regular updates to other Parkland families' counsel, explained the theories of liability they had developed against the United States and the legal arguments that could be made to overcome the Government's anticipated legal defenses.

13. Although undersigned counsel encouraged other Parkland attorneys to submit Standard Forms 95 and to file similar suits, for approximately the first fifteen months of this litigation only one other claimant filed suit. Namely, Robert Stein of Rennert Vogel Mandler & Rodriguez, P.A, filed suit on behalf of Philip and April Schentrup, who lost their daughter Carmen in the Parkland shooting, and used materially the same complaint as the Guttenberg's original complaint. No other claimant filed suit until the close of jurisdictional discovery in 2020.

14. On July 31, 2019, this Court entered an order consolidating the Schentrups' case with the Guttenbergs' case. *See* D.E. 55.

15. The parties' jurisdictional discovery disputes continued throughout 2019 and into early 2020, and undersigned counsel drafted and filed motions and memoranda identified at D.E. 155, D.E. 160, D.E. 173.

16. During jurisdictional discovery, undersigned counsel prepared and served written discovery requests and Freedom of Information Act Requests; took several jurisdictional-

5

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346   |   www.podhurst.com

discovery depositions, including lengthy depositions in Washington, D.C., which required travel;[3] and took several depositions by written questions of certain senior Government officials. Each of these depositions was taken over the Government's objection and only after lengthy conferrals with the Government and then motion practice seeking to compel the depositions. In total, five depositions of FBI officials were taken during the jurisdictional discovery phase of this litigation. All of these efforts were undertaken solely by undersigned counsel and Robert Stein.

### III. The Amended Complaint and the Government's second Motion to Dismiss

17. On March 4, 2020, after months of intensive jurisdictional discovery disputes, this Court denied the Government's Motion to Dismiss as to the discretionary function exception to the FTCA. *See* D.E. 187. Following that ruling, and after a significant expenditure of time and resources devoted to legal and evidentiary research, undersigned counsel drafted and filed a 55-page Amended Complaint. *See* D.E. 190. The Amended Complaint was carefully crafted to anticipate the Government's arguments with respect to the duty of care and other legal defenses, and its breadth and depth reflect the exhaustive legal research conducted by undersigned counsel.

18. On the eve of the two-year statute of limitations, on February 12 and February 13, 2020, many Parkland families filed suit against the United States for the first time. In total, 17 actions were filed against the Government during this period. Undersigned counsel provided the other families' attorneys copies of our clients' complaint, and all the additional families filed materially the same complaint initially filed by undersigned counsel.

19. On March 27, 2020, the Government moved to consolidate those additional 17 actions with the instant action. *See* D.E. 191. The Plaintiffs did not object to this Motion, *see* D.E. 193, and the Court granted the Motion, *see* D.E. 194, D.E. 195, ruling that these later-filed cases would be consolidated for pretrial proceedings involving the government's liability, including but not limited to dispositive motions and discovery.

20. Between April 17 and April 28, 2020, several Plaintiffs formally adopted the Amended Complaint drafted and filed by undersigned counsel. *See*, D.E. 197, D.E. 198, D.E. 199, D.E. 200, D.E. 201, D.E. 2020, D.E. 203, D.E. 204, D.E. 205, D.E. 207, D.E. 208, D.E. 209, D.E. 210, D.E. 211, D.E. 212, D.E. 213, D.E. 214.

---

[3] The depositions in Washington, D.C. included those of the Rule 30(b)(6) witness by the Government, which took place on August 22, 2019; and the PAL Unit Chief, which took place on August 23, 2019.

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

21. With the Government's Motion to Dismiss as to the discretionary function exception having been denied, on April 21, 2020 the Government filed a Motion to Dismiss the Amended Complaint on the purported ground that the Government did not owe a duty to the Plaintiffs. *See* D.E. 206.

22. On behalf of all Plaintiffs, undersigned counsel drafted and filed a Response to the Government's Motion to Dismiss on May 8, 2020. After the Government filed its Reply on May 20, undersigned counsel drafted and filed a Motion for Leave to file a Surreply. *See* D.E. 220. After the Court granted such leave, undersigned counsel drafted and filed the Surreply. *See* D.E. 223.

23. On August 31, 2020, this Court denied the Government's Motion to Dismiss. *See* D.E. 229.

**IV.   The merits phase**

24. Throughout late 2020 and early 2021, this Court consolidated several additional cases with this case. *See* D.E. 227, D.E. 233, D.E. 239, D.E. 257. In total, undersigned counsel has acted in this matter on behalf of more than fifty Plaintiffs, representing 16 wrongful death claims, 14 bodily injury claims and 10 claims arising out of the psychological impact of the Parkland shooting. And the victories secured on behalf of undersigned counsel's individual clients, including the denial of the Government's Motion to Dismiss, inured to the benefit of all Plaintiffs.

25. On November 12, 2020, undersigned counsel filed an unopposed motion to be appointed Lead Counsel in this matter. *See* D.E. 242. The Motion was joined by all consolidated Plaintiffs in this matter. On November 13, this Court granted that Motion. *See* D.E. 244.[4]

26. During 2021, undersigned counsel—formally acting as Lead Counsel—continued the work that counsel had undertaken for the previous two years. Undersigned counsel undertook merits discovery regarding liability issues in this case on behalf of all Plaintiffs. Undersigned counsel drafted and served every liability-focused discovery request in this matter, including multiple sets of Requests for Production, Interrogatories, and Requests for Admissions. Undersigned counsel also undertook countless conferrals and discussions with the Government

---

[4] As is typical for such orders, this Court's Order appointing Lead Counsel did not expressly address attorney compensation. *See* David L. Noll, *What Do MDL Leaders Do?: Evidence from Leadership Appointment Orders*, Pound Institute Lewis & Clark Symposium, at 36 (Nov. 1, 2017), *available at* https://www.poundinstitute.org/wp-content/uploads/2019/10/Noll-David-MDL-Leaders-Oct-1-2019.pdf (explaining that only 4% of orders appointing lead counsel in MDL cases address other attorneys' obligation to pay for common benefit work and only 8% address how lead lawyers would be compensated).

7

regarding the scope of and process for merits discovery. Several of these negotiations—for example, those regarding the Government's proposed search terms and custodians—involved hours of telephone conferences with counsel for the Department of Justice and FBI.

27. Undersigned counsel also prepared for and took multiple depositions of liability witnesses, including one in-person deposition requiring travel to Bradenton, Florida.[5] These depositions lasted several hours each and required multiple days' worth of preparation and document review. In total, undersigned counsel took all ten of the liability depositions in this litigation: five depositions of FBI officials in jurisdictional discovery with assistance from Robert Stein, and an additional five depositions in the merits discovery phase of the litigation.

28. As in jurisdictional discovery, merits discovery gave rise to multiple disputes between undersigned counsel and counsel for the Government. Accordingly, undersigned counsel drafted and filed numerous discovery-related motions and legal briefs, including those identified at D.E. 305, D.E. 316, D.E. 321, D.E. 327, D.E. 329, D.E. 331, D.E. 337, D.E. 341, D.E. 347, D.E. 348, D.E. 364, D.E. 365, D.E. 369, and D.E. 381. Undersigned counsel also drafted and filed a Response in Opposition to the Government's Motion to Modify the Court's Scheduling Order. *See* D.E. 320. The Court denied the Government's Motion to Modify the Court's Scheduling Order, and thus trial was to take place on January 31, 2022. Throughout the Fall of 2021, with trial approaching, undersigned counsel engaged in preparations to put on the liability case at trial and devoted many hours to consultation with several retained expert witnesses whose testimony would help establish the elements of duty, breach, and causation. By the time the case was settled, undersigned counsel had reviewed every document produced by the Government in this litigation during both the merits and jurisdictional discovery phases, which spanned tens of thousands of pages.

**V.    Settlement**

29. During the Fall of 2021, undersigned counsel participated in Court-ordered mediation sessions on behalf of all Plaintiffs.

30. On November 12, 2021, following negotiations led by undersigned counsel, the Plaintiffs and the Government reached an agreement to voluntarily resolve this matter on a global

---

[5]    The merits discovery depositions included those of Mary Theall (in Bradenton, Florida) and four FBI employees.

8

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

basis. The global settlement was an historic result for the Parkland families and was well received by Plaintiffs and their counsel.

## ARGUMENT

I. **The common benefit doctrine compensates attorneys for common benefits conferred on other litigants and their counsel.**

The United States Supreme Court "has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing cases). *See also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006); *Muranksy v. Godiva Chocolatier, Inc.*, 2016 WL 11601080, at *3 (S.D. Fla. Sept. 28, 2016) (explaining that "attorneys who recover a common benefit for persons other than themselves or their clients are entitled to a reasonable attorneys' fee from the Settlement Fund as a whole") (citation omitted).

The authority to require common-benefit compensation derives in significant part from the equitable concept of unjust enrichment. *See*, *e.g.*, *In re City of New York*, 2011 WL 7145228, at *3 (E.D.N.Y. Dec. 2, 2011) ("The 'common benefit doctrine' rests on a theory of unjust enrichment . . ."); *Boeing*, 444 U.S. at 478; *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 WL 682174, at *5 (D. Minn. Mar. 7, 2008); William B. Rubenstein, *Newberg on Class Actions* § 15:113 (5th ed. 2021) (explaining that unjust enrichment is a primary rationale for common-benefit fees in the class-action context); Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 LA. L. REV. 371, 376 (2014) ("The theoretical bases for the application of the common fund concept to MDLs are the same as for class actions—namely, equity and her blood brother, *quantum meruit*."). The federal courts' authority to award and order common-benefit fees also derives from their inherent authority to manage and consolidate complex litigation effectively and efficiently. *See In re Air Crash Disaster at Fla. Everglades on December 29, 1972*, 549 F.2d 1006, 1016 (5th Cir. 1977). *See also* Fallon, 74 LA. L. REV. at 377 ("The [old] Fifth Circuit has long recognized that a court's power to consolidate and manage litigation necessarily implies a corollary authority to appoint lead . . . counsel and to compensate them for their work."). Accordingly, and as detailed further below, the common benefit doctrine is not limited to a particular type of case, nor is it limited to scenarios where multiple litigants benefit from a strictly defined "common fund."

9

**Podhurst Orseck P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

The Eleventh Circuit's approach to common-benefit cases is to award counsel attorneys' fees "as a percentage of the [overall] recovery, as opposed to a complex hours-based loadstar approach." *Allapattah Servs.*, 454 F. Supp. 2d at 1201 (citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir. 1992)). *Accord Godiva Chocolatier*, 2016 WL 11601080, at *3. And in determining such awards, the "bench mark" percentage is 25 percent, "which may be adjusted up or down based on the circumstances of each case." *Camden I*, 946 F.2d at 775. *See also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citation omitted). Depending on the circumstance, higher awards may be appropriate. *See Camden I*, 946 F. 2d at 774–75 (noting that "even larger percentages [than 50%] have been awarded"); *Amorin v. Taishan Gypsum Co., Ltd.*, 861 F. App'x 730, 733 (11th Cir. 2021) (affirming award of 45 percent).

When determining the appropriate amount of a common benefit fee, courts in this Circuit routinely consider various factors including the time, labor, skill, and risk required to litigate the case, as well as the extraordinary nature of the result obtained. *See*, *e.g.*, *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1279 (11th Cir. 2021); *Johnson v. NPAS Solns., LLC*, 975 F.3d 1244, n. 14 (11th Cir. 2020). Specifically, *Camden I* instructs that "courts should utilize those [factors] set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to evaluate, set, and review percentage fee awards in common fund cases." *Dear v. Q Club Hotel, LLC*, 2018 WL 1830793, at *2 (S.D. Fla. Mar. 14, 2018).[6]

## II. The common benefit doctrine extends to all cases in which attorneys create and confer benefits upon a broad group of litigants and their attorneys.

Although common benefit fee awards are "typical in class actions," *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019), they are not restricted to the class-action context. *See* Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 LA. L. REV. at 375 (explaining that the

---

[6] The *Johnson* factors include (1) the time and labor required of lead counsel to prosecute the case; (2) the novelty and difficulty of the questions involved in the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by lead counsel due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount of the common benefit or fund involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–79.

10

**Podhurst Orseck P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

common benefit "doctrine is not limited to class actions: It has been used in complex litigation to compensate attorneys whose work benefits others similarly situated").

For example, courts in this Circuit and elsewhere have awarded common benefit fees in collective actions under the Fair Labor Standards Act, *see Mcguire v. Intelident Solns., LLC*, 2020 WL 10506642, at *4 (M.D. Fla. Sept. 2, 2020); in multi-district litigation cases, *see In re Vioxx Prods. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010); and more broadly in other settings where "a small group of plaintiffs' counsel were . . . designated as lead or liaison counsel for plaintiffs' side in a massive consolidated multidistrict case." *Fla. Everglades*, 549 F.2d at 1008.

Indeed, it is well-settled that courts have the power to direct that appointed lead counsel "be compensated" and to "require[e] the payment [to] come from other attorneys[.]" *Fla. Everglades*, 549 F.2d at 1016. That is in part because "if lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation." *Id.*

The Eleventh Circuit recently had occasion to consider the scope of the common-benefit doctrine. *See Amorin*, 861 F. App'x at 733. After the district court awarded 45 percent of a certain settlement fund to class counsel, objecting counsel appealed, arguing that "the award [was] inappropriate" because, strictly speaking, the settlement fund obtained was not a true "common fund." *See id.* The Eleventh Circuit affirmed the award. The court explained that "common benefit fees—grounded in the courts' equity power—need not satisfy rigid eligibility requirements." *Id.* at 734 (citation omitted). *See also Fla. Everglades*, 549 F.2d at 1019 (explaining that cases "need not precisely fit" the mold of common-fund or equitable-fund cases in order to warrant common benefit fees, particularly where the court assigns "additional responsibilities to some attorneys").[7]

In short, the common benefit doctrine is rooted in equitable considerations, in the federal courts' authority to manage litigation efficiently, and in the federal courts' interest in compensating attorneys who serve as appointed lead counsel. *See Florida Everglades*, 549 F.2d at 1016. The

---

[7] Even if a strictly defined "common fund" were required, the lump sum settlement that undersigned counsel negotiated with the Government here clearly constitutes a common fund. *See* William B. Rubenstein, *Newberg on Class Actions* § 15:56 (5th ed. 2021) ("The most straightforward common fund situation is that in which the defendant is ordered to pay—or agrees to pay through a settlement—a set amount of money to a group of litigants. The lump sum that the defendant pays constitutes the common fund.").

11

doctrine is therefore not limited to a particular type of litigation. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167 (1939) ("[W]hen such a [common] fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.").

As particularly relevant here, courts have repeatedly recognized that common-benefit awards are available in FTCA cases and other cases involving the U.S. government. *See Lucarelli v. United States*, 943 F. Supp. 157, 158 (D.P.R. 1996); *Limone v. United States*, 815 F. Supp. 2d 393, 399 (D. Mass. 2011); *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1486 n.10 (10th Cir. 1984); *Knights of the K.K.K. Realm of La. v. E. Baton Rouge Par. Sch. Bd.*, 679 F.2d 64, 67 (5th Cir. 1982); *Vincent v. Hughes Air West, Inc., et al.*, 557 F.2d 759 (9th Cir. 1977). Courts have also awarded common-benefit or common-fund fees in non-class and non-MDL mass-tort cases where appointed counsel act on behalf of a broader group. *See*, *e.g.*, *In re City of New York*, 2011 WL 7145228 (E.D.N.Y. Dec. 2, 2011), *report and recommendation adopted* (Jan. 19, 2012).

As also relevant here, common benefit awards in non-class-action cases are typically extracted from attorneys' fees, rather than from the recovery of claimants or plaintiffs. *See* Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 LA. L. REV. at 376 (explaining that unlike in class actions, where the beneficiary of the common benefit is the claimant, in MDLs and other complex litigation the beneficiaries are the attorneys). *Accord*, *e.g.*, *Vioxx*, 760 F. Supp. 2d at 658 (E.D. La. 2010) (ordering common benefit fee extracted from attorney's fees); *Smiley v. Sincoff*, 958 F.2d 498, 500 (2d Cir. 1992).

**III.   Common benefit fees are warranted in this case.**

This is an axiomatic case for common benefit fees. Specifically, such fees are warranted here because undersigned counsel secured an exceptionally favorable global recovery for the benefit of all Plaintiffs in this matter, did so largely at its own risk and expense, and did so based on efforts for which undersigned counsel took almost exclusive responsibility. *See Boeing*, 444 U.S. at 478 ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

Undersigned counsel filed the first Complaint against the United States arising out of the Parkland shooting. Undersigned counsel litigated the case through an extensive, hard-fought, and

12

labor-intensive period of jurisdictional discovery. Undersigned counsel litigated the Government's Motion to Dismiss through this Court's denial of that Motion. And following the denial of that Motion, the filing of several dozen additional Parkland-related claims, and the consolidation of the Parkland FTCA litigation, undersigned counsel sought without opposition this Court's appointment as Lead Counsel. Thereafter, undersigned counsel continued to take primary responsibility over prosecuting the entire liability aspect of this consolidated case, including by serving merits discovery, conferring on and then litigating countless merits discovery disputes, hiring expert witnesses, taking numerous liability depositions, filing and arguing multiple pretrial motions, and negotiating with the Government an historic global settlement.

The overwhelming majority of these efforts were undertaken solely by undersigned counsel and at counsel's sole risk, expense, and opportunity cost. All in all, undersigned counsel and other Podhurst Orseck attorneys took or defended every liability and jurisdictional deposition in this case; drafted and filed every liability and discovery motion in this case; drafted and served every liability-oriented discovery request; retained and conferred with every liability expert witness in this case; led every liability, discovery-related and case-management meeting and conferral with the Government in this case; and, with one exception, argued every hearing in this matter.

Most recently, undersigned counsel undertook several days' worth of mediation with the Government, obtained authority from all Plaintiffs to negotiate a settlement with the Government, and undertook negotiations culminating in a highly favorable global settlement. As outlined below, the applicable *Johnson* factors clearly support undersigned counsel's requested fee.

**A. Undersigned counsel's prosecution of this case required substantial time and labor.**

As noted above, undersigned counsel initiated this case on behalf of Fred and Jennifer Guttenberg in 2018, and for well over a year litigated the case without the assistance of other counsel. This early stage of litigation required a substantial investment of time, labor, and effort, including—as detailed above and amply reflected in this Court's docket—extensive litigation regarding jurisdictional discovery.

The consolidation of the various Parkland FTCA cases expanded undersigned counsel's role and work on behalf of all Plaintiffs. In addition to continuing to handle all aspects of liability litigation, undersigned counsel handled all aspects of liability discovery, prepared extensive discovery requests, conducted countless conferrals with the Government on behalf of all Plaintiffs, took several lengthy liability depositions, and drafted and filed more than a dozen motions and

13

briefs concerning discovery disputes. And as Lead Counsel, undersigned counsel undertook the significant and labor-intensive responsibility of coordinating all Plaintiffs' participation in this matter, including ensuring that all Plaintiffs complied with applicable deadlines and requirements regarding damages discovery.

Equally importantly, on behalf of all Plaintiffs, undersigned counsel began to prepare for a highly complex bench trial set to begin on January 31, 2022. Among other things, undersigned counsel retained three expert witnesses and held numerous phone and Zoom calls with the witnesses to prepare them for their Rule 26 disclosures and trial testimony. Undersigned counsel also undertook a detailed review of tens of thousands of pages' worth of liability discovery, largely consisting of arcane and often highly redacted FBI documents. Several members of the Podhurst Orseck team devoted themselves nearly full-time to the litigation of this consolidated action and trial preparation for several weeks beginning in September 2021.

Undersigned counsel was retained in this case on a contingency basis and maintains an exclusively contingent-fee practice. Accordingly, every effort expended on this case was undertaken without immediate compensation, at undersigned counsel's own risk and expense, and to the detriment of undersigned counsel's availability to take on additional work on other matters.

Moreover, undersigned counsel's efforts on this matter required significant work from several attorneys and staff at the Podhurst Orseck firm. In addition to Lead Counsel Kristina Infante's extensive work on this matter over several years, Podhurst associate Pablo Rojas worked on this litigation, including at times on a full-time and overtime basis, beginning in November 2019; partner Steven Marks oversaw various aspects of this matter and devoted himself exclusively to mediation and settlement negotiations spanning several weeks between August and November 2021; former Podhurst associate Dayron Silverio worked on this litigation, including at times on a full-time and overtime basis, for the year prior to his departure from the firm in the Summer of 2019; and other attorneys at the firm, including partner Stephen Rosenthal, contributed significant legal analysis and strategic guidance. In addition, two paralegals, Lidia Aja and Jacqueline Pupo, devoted countless hours to this matter from 2018 through 2021. Given the relatively small size of undersigned counsel's firm, this was a considerable investment of the firm's limited resources.

**B. The issues involved in this case were novel and difficult and required exceptionally skilled lawyering.**

All FTCA cases present significant challenges for plaintiffs. Among other things, every FTCA plaintiff must contend with legal doctrines designed to protect the Government from suit or

14

liability, litigate against highly capable and experienced Government attorneys, and often—as here—wrestle with doctrines that shield otherwise relevant and admissible evidence from the civil discovery process.

This case was even more challenging for the Plaintiffs because it presented numerous novel and difficult issues absent from the typical FTCA case. For example, this case alleged the negligence of the FBI, an agency whose internal procedures and policies are ordinarily kept secret and confidential. And because the heart of the Plaintiffs' case was an admitted violation of internal FBI protocols, whose content the agency jealously guards, undersigned counsel had to engage in highly sensitive discovery and related motion practice to obtain documents and information necessary to prosecute the case.

Throughout the long history of this case, undersigned counsel also had to respond to the zealous advocacy of the Government's skilled and experienced counsel. Often, this advocacy concerned complex and/or cutting-edge legal questions. Among other things, undersigned counsel briefed and argued issues related to (1) the FTCA's discretionary function exception, (2) various government-specific litigation privileges including the law-enforcement privilege, (3) complex discovery disputes involving redacted or withheld Government documents, and (4) the interaction between the FTCA and Florida's public-duty doctrine. The briefing on the latter issue spanned dozens of pages, including a surreply, and required highly detailed analysis of both federal and Florida law. Necessarily, each phase of this litigation required a highly skilled group of attorneys capable of analyzing complex legal issues and facts spread across thousands of pages' worth of arcane and often heavily redacted documents. Undersigned counsel and their staff met each of these challenges in a litigation that spanned nearly four years and settled only two months before the scheduled trial date.

### C. Undersigned counsel prosecuted this matter at its own considerable risk and at the expense of other employment and opportunities.

For nearly two years, undersigned counsel virtually alone bore the risk of non-collection in this matter, including the risk that the Government would prevail on its Motion to Dismiss. Other than undersigned counsel and their clients, no other Plaintiff filed suit against the United States for the first seven months of this litigation, and most Plaintiffs did not file suit until the Government's second Motion to Dismiss was denied nearly two years into this litigation. In short, for much of the history of this litigation, undersigned counsel undertook the case alone, and later with capable assistance from Robert Stein of Rennert Vogel Mandler & Rodriguez, P.A.

15

**Podhurst Orseck P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

At every stage of the litigation, the Government's attorneys' robust advocacy presented significant risks and obstacles to the Plaintiffs' claims. And although undersigned counsel was confident of prevailing at trial, meeting the challenges presented by the Government required not only sharp and nimble advocacy, but also a considerable investment of time. Often, this litigation required undersigned counsel's attention on a round-the-clock basis, for example when this Court required expedited briefing or the parties engaged in intensive discovery disputes near the expiration of discovery deadlines.

Relatedly, this litigation precluded undersigned counsel from other employment and from assisting their colleagues in other active cases. Undersigned counsel works almost exclusively on a contingent-fee basis, including in this matter. And undersigned counsel invested considerable amounts of time over more than three years in this matter, limiting counsel's ability to work on numerous other matters, with no guarantee that this substantial investment would be reimbursed.

### D. Undersigned counsel achieved an extraordinary result.

As counsel for all Plaintiffs have recognized, the result obtained by undersigned counsel on behalf of all Plaintiffs was extraordinary. Indeed, given the challenges facing FTCA plaintiffs generally and the challenges of this FTCA case in particular, it was remarkable for this case to have proceeded past the Motion to Dismiss stage at all.

Perhaps more importantly, the final resolution of the Plaintiffs' claims was an excellent result for the Parkland families themselves. As far as undersigned counsel is aware, it is the largest FTCA settlement in history, well in excess of any other settlement announced or publicly reported—as law requires—by the Department of Justice. It is by far the greatest compensation secured to date for the Parkland families, who have filed multiple lawsuits against governmental and non-governmental defendants arising from the shooting. And there is no dispute that this settlement was the result of undersigned counsel's persistent and capable efforts in this litigation over the past three years. This achievement on behalf of the Parkland families is deserving of just compensation.

### E. The requested fee is commensurate with—and indeed conservative by comparison with—fees awarded in similar cases.

The requested fee of 10 percent comports with customary fees awarded in similar cases. Indeed, it is conservative. As noted above, the benchmark common benefit fee award in the Eleventh Circuit is 25 percent. And such fees are awarded even in cases, for example class actions, where undersigned counsel was just one of several attorneys who filed related cases

16

**Podhurst** Orseck **P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

simultaneously. Here, in contrast, undersigned counsel filed the first FTCA case arising from the Parkland shooting months or years before other Plaintiffs filed materially identical cases. Indeed, it was undersigned counsel's efforts and successful litigation of the Government's Motions to Dismiss that led most other Plaintiffs to decide to file suit against the United States, in addition to their previously filed cases in state court against local government entities. All of the consolidated plaintiffs benefitted substantially because of undersigned counsel's years-long investment of time and effort. In short, this case strongly supports a fee award within the Eleventh Circuit's benchmark range.

However, in part because other attorneys are also being compensated from the same fund and the FTCA caps all attorneys' fees at 25 percent, undersigned counsel's fee request is considerably more modest. Namely, undersigned counsel requests only ten percent as a common-benefit fee. This request is, of course, very conservative when compared with the Eleventh Circuit benchmark. And it helps ensure that other attorneys in this matter retain a significant majority of their fees.

## CONCLUSION

For the foregoing reasons, undersigned counsel respectfully requests that this Court award a common benefit fee totaling ten percent of the global settlement, to be paid from the fees earned by the attorneys in this matter. This award is well-supported by law, conservative compared to Eleventh Circuit benchmarks and precedent, and conservative relative to undersigned counsel's contributions to this case. To the extent that additional information would be helpful to the Court, undersigned counsel is prepared to make any further evidentiary submissions in writing or at a hearing, at which undersigned counsel and other firms could proffer evidence of work performed toward the global settlement.

WHEREFORE, undersigned counsel requests an Order in accordance with the foregoing, and such other and further relief as the Court deems just and proper.

**Podhurst Orseck P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

## VERIFICATION

I declare under penalty of perjury that I have personal knowledge the facts described herein, and that the foregoing is true and correct.

/s/ Kristina M. Infante
Kristina M. Infante

Executed on: December 15, 2021

Respectfully submitted,

**PODHURST ORSECK P.A.**
Counsel for Plaintiffs *Frederic and Jennifer Guttenberg, as Co-Personal Representatives of the Estate of Jaime Guttenberg; Kevin and Sara Colton as natural parents of J.A. Colton, minor son*
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800

By: /s/ Kristina M. Infante
Aaron S. Podhurst
FL Bar No.: 63606
Steven C. Marks
FL Bar No. 516414
Kristina M. Infante
FL Bar No: 112557
Pablo Rojas
FL Bar No. 1022427

**Plaintiffs' Lead Counsel**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by the Court CM/ECF system on this 15th day of December, 2021.

By /s/ Kristina M. Infante